(Nos. 59865, 59930 cons

THE WESTERN CASUALTY & SURETY COMPANY,
Appellee, v. RICHARD BROCHU *et al.*, Appellants.

*Opinion filed February 22, 1985.—Rehearing
denied March 29, 1985.*

James J. Desanto, P.C., of Waukegan (James J. Desanto, of counsel), for appellants Richard Brochu and Marita Brochu.

Herbert I. Rothbart, of Chicago, for appellants Sig L. Bjerga and Mark III Development Company.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll, Nunzio C. Radogno, and C. Barry Montgomery, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

This declaratory judgment action involves the construction of a general comprehensive liability insurance policy issued by the Western Casualty & Surety Company (Western) to the insured, Mark III Development Company, a corporation (Mark III). Western filed a two-count complaint for declaratory judgment in the circuit court of Lake County alleging that the policy in question did not apply to a property damage claim brought against the insured by Richard and Marita Brochu (Brochus). The complaint, which named the Brochus, Mark III's president, Sig L. Bjerga, and Mark III as defendants, alleged that the insurance policy was not applicable to the Brochus' claim by virtue of exclusions (n) and (o) of the policy. In response, the Brochus filed a motion for summary judgment arguing that Western's policy did provide coverage. Mark III joined in this motion and, in a memorandum in support thereof, additionally argued that Western had waived any policy defenses by accepting defense of the claim in a letter dated October 28, 1980, and by the subsequent acts of counsel for Western.

Based on the pleadings, exhibits, contractual recitals, applications for insurance, and actual insurance contracts, the trial court concluded that no genuine issue as to any material fact existed and that the defendants were entitled to judgment in their favor as a matter of law. The court, found that, when read in its entirety, the policy was ambiguous and, therefore, construed it against the insurer. The court also found that Western had waived its opportunity to assert a policy defense.

On appeal, the appellate court reversed the decision of the circuit court in part and remanded the cause. (122 Ill. App. 3d 125.) It found that the Brochus' claim was not covered under the Western policy. It further found

that the trial court had erred in regard to its finding that Western had waived its right to assert a policy defense. Nevertheless, since a question of fact remained as to the issue of estoppel, it remanded the cause for determination of that issue. We granted the Brochus leave to appeal (No. 59865). Bjerga's and Mark III's petition for leave to appeal was also granted (No. 59930), and the causes have been consolidated for the purpose of review.

Three questions are raised: (1) Under the terms of the policy, must Western defend and, upon a finding of liability, indemnify Mark III for the property damage claim brought against the insured by the Brochus? (2) Should Western be precluded from asserting a defense of noncoverage by virtue of its conduct? and (3) Did Western's attorney's transmittal of a reservation of rights letter give rise to a conflict of interest?

The record reveals that on May 1, 1976, Sig Bjerga, who was then doing business as Bjerga and Son Construction Company, purchased a comprehensive liability policy from Western for which he paid a premium of $643 per year.

In September of 1976, Bjerga, who had begun operating as Mark III, entered into a written home-purchase agreement whereby Mark III agreed to construct a home for the Brochus. The agreement expressly provided that "[t]he house shall be completed in a good and workmanlike manner substantially in accordance with the plans prepared by Mark III." The plans, which were incorporated by reference into the contract, provided for soil bearing pressure of "3000 P.S.F. min," which was to be verified at the site. The purchase price of the home was $100,300.

On October 2, 1976, Bjerga amended his insurance policy with Western to reflect the incorporation of Mark III. He also increased his coverage under the policy to include both independent contractors and completed-op-

erations coverage. The policy's premium, as amended, was $2,080 per year. This amended policy was renewed every May 1 thereafter up to and including May 1, 1980.

On January 5, 1977, the Brochus took possession of the house. However, due to the rate of settlement, it wasn't until sometime thereafter that they realized the house was sinking into the ground. As a result, on August 8, 1980, the Brochus filed a two-count complaint against Bjerga and Mark III for breach of contract. The first count of the complaint alleged that Bjerga had breached an express warranty that the home be built in a good and workmanlike fashion and that Bjerga had also breached a specific provision of the contract requiring an on-site soil test. The second count alleged fraud in the inducement. Under this count, the Brochus claimed that they had relied upon the contractual representations concerning the performance of soil tests and that such representations were false.

The Brochus' complaint sought recovery for property damages to the house. Specifically, it alleged that the sinking had caused the foundation to crack, the support beams to sag, the doors and frames to be out of synch, and the interior fixtures to separate from the walls.

Upon receiving notice of the suit, Mark III retained private counsel and also forwarded the complaint to Western. Western sent the complaint to its local attorney, Leo Sullivan. In a letter addressed to Sullivan and dated October 28, 1980, Western stated:

> "We were denying coverage because of exclusion (n) and (o) in our policy \*\*\*. After further discussion with the insured and his attorney, the company has decided that we will go ahead and accept the defense \*\*\*. Our policy provides products and completed operations coverage and there doesn't appear to be any further question concerning coverage at this time."

A copy of this letter was sent to the insured's private at-

torney, with a notation informing him that Western had accepted the defense and requesting that he forward any relevant material to Sullivan.

Fifteen days later, on November 12, 1980, Sullivan notified Mark III and its attorney, by letter, that Western had communicated directions to him regarding the defense of the claim. According to Sullivan, the defense was being undertaken with a full reservation of Western's rights. The letter referred specifically to exclusions (n) and (o) as two of the bases upon which Western was reserving its right to deny liability under the policy. This letter also informed Mark III that it was free to take over the complete management of the defense and reject Western's tender of a defense under the reservations stated. Neither Mark III nor its attorney rejected Sullivan's handling of the defense. Therefore, Sullivan continued to represent the defendants until October 20, 1981, when Western filed its complaint for declaratory judgment.

The insurance policy in question initially provides broad coverage to the insured. It states:

> "The Western will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> A. bodily injury or
> B. property damage to which this insurance applies * * *."

Resolution of the first issue requires this court to determine whether the policy of insurance applies to the property damage claim brought against the insured by the Brochus. Considered alone, the above portion of the policy would appear to grant coverage for all property damage claims brought against the insured. However, an insurance contract is to be interpreted from an examination of the complete document and not an isolated part. *United States Fire Insurance Co. v. Schnackenberg*

(1981), 88 Ill. 2d 1, 5; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 171; *Cobbins v. General Accident Fire & Life Assurance Corp., Ltd.* (1972), 53 Ill. 2d 285, 290.

Immediately following the coverage portion of the policy, there is a list of 19 separate exclusions. These exclusions define the limits of coverage actually provided. If any one of the exclusions applies there is no coverage. Thus, they are an integral part of the policy which must be considered in determining the scope of coverage. The exclusions relevant to this case provide:

"This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;*

\* \* \*

(n) to property damage to the named insured's products or any part of such products;

\* \* \*

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." (Emphasis added.)

Western maintains that its policy does not provide coverage because the damage claimed by the Brochus, in their complaint against Mark III, is specifically excluded under exclusions (n) and (o) quoted above. According to Western, the policy in question was never intended to protect the insured from economic loss sustained as a result of inadequacies in the insured's own work or product.

The Brochus and Mark III contend that there is coverage under the terms of the policy. They point out that

the Brochus' complaint alleged breach of an express warranty, that the work would be performed in a good and workmanlike manner. As such, they argue that the Brochus' claim fits within the exception to exclusion (a) and is, therefore, covered under the policy. They further argue that the policy is ambiguous to the extent that exclusions (n) and (o) conflict with exclusion (a) and the completed-operations coverage they purchased. Accordingly, they ask that the policy be construed in favor of the insured and against the insurer. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4; *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376; *Menke v. County Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423.

This rule of construction, however, does not justify construing a contract against an insurer when no real ambiguity exists. (*Cobbins v. General Accident Fire & Life Assurance Corp., Ltd.* (1972), 53 Ill. 2d 285, 294.) If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made. *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 170-71; *Dempsey v. National Life & Accident Insurance Co.* (1949), 404 Ill. 423, 426.

Though this court has not had occasion to interpret the exclusions set out above, these provisions appear to be standard clauses commonly utilized in the insurance trade. (See R. Henderson *Insurance Protection for Products Liability and Completed Operation—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 418 (1971).) Accordingly, similar or identical provisions have been interpreted by our appellate court and a number of other jurisdictions as well. See, *e.g., Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687; *Hart-*

*ford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115; *Consumers Construction Co. v. American Motorists Insurance Co.* (1969), 118 Ill. App. 2d 441; *Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 405 A.2d 788; *Commercial Union Assurance Companies v. Gollan* (1978), 118 N.H. 744, 394 A.2d 839.

More recently, in *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, the appellate court was called upon to construe the meaning of identical provisions, under circumstances substantially similar to those of the case at bar. In *Qualls*, a carpenter was sued for breach of contract and breach of warranty, in connection with the construction of a home. The carpenter sought coverage under a policy of insurance which provided coverage for completed operations. The insurer denied coverage and instituted an action for declaratory judgment. Just as in the case at bar, the dispute centered on the three exclusions stated above. The appellate court held that the exception to exclusion (a) did not constitute a grant of coverage as the damage complained of was limited to the insured's own work. (123 Ill. App. 3d 831, 834.) According to the court, the exception to exclusion (a) was intended to provide coverage for a breach of warranty which results in damage to the person or property of others. It was not intended to pay the costs associated with repairing or replacing the insured's defective work or products as such costs were specifically excluded by exclusions (n) and (o) of the policy. 123 Ill. App. 3d 831, 833-34.

This analysis of the import of exclusion (a) is in accord with the majority of jurisdictions which have considered the same exclusions. (See *Stillwater Condominium Association v. American Home Assurance Co.* (D. Mont. 1981), 508 F. Supp. 1075; *Indiana Insurance Co. v. DeZutti* (Ind. 1980), 408 N.E.2d 1275; *Shelby Mutual In-*

*surance Co. v. LaMarche* (Fla. App. 1979), 371 So. 2d 198; *U.S. Fire Insurance Co. v. Colver* (Alaska 1979), 600 P.2d 1; *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.* (Tenn. 1979), 591 S.W.2d 760; *Weedo v. Stone-E-Brick, Inc.*(1979), 81 N.J. 233, 405 A.2d 788; *St. Paul Fire & Marine Insurance Co. v. Coss* (1978), 80 Cal. App. 3d 888, 145 Cal. Rptr. 836; *Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.* (8th Cir. 1975), 522 F.2d 1207; *Haugan v. Home Indemnity Co.* (1972), 86 S.D. 406, 197 N.W.2d 18.) These courts have found that the exception to exclusion (a) merely removes breach of warranty from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions, such as (n) and (o). (*St. Paul Fire & Marine Insurance Co. v. Coss* (1978), 80 Cal. App. 3d 888, 896, 145 Cal. Rptr. 836, 841; *Haugan v. Home Indemnity Co.* (1972), 86 S.D. 406, 412-13, 197 N.W.2d 18, 22.) As the court in *Stillwater* noted: "[T]he language used in the exception to exclusion (a) that '*this exclusion* does not apply to \*\*\*' provides further notice that other exclusions may and do indeed further limit the coverage granted in the insuring provision." (Emphasis added.) (*Stillwater Condominium Association v. American Home Assurance Co.* (D. Mont. 1981), 508 F. Supp. 1075, 1079; see also *Shelby Mutual Insurance Co. v. LaMarche* (Fla. App. 1979), 371 So. 2d 198, 200.) In contrast, the minority view finds the exception to exclusion (a) to be in conflict with exclusions (n) and (o). See *Baybutt Construction Corp. v. Commercial Union Insurance Co.* (Me. 1983), 455 A.2d 914; *Commercial Union Assurance Co. v. Gollan* (1978), 188 N.H. 744, 394 A.2d 839; *Applegren v. Milbank Mutual Insurance Co.* (N.D. 1978), 268 N.W.2d 114; *Federal Insurance Co. v. P.A.T. Homes, Inc.* (1976), 113 Ariz. 136, 547 P.2d 1050.

We find the majority view persuasive. Here, the in-

suring provisions of the policy initially provide coverage for the Brochus' claim. This coverage survives exclusion (a), as the Brochus' contract action is premised on breach of an express warranty. This exception to exclusion (a) is necessary to give meaning to the completed-operations coverage which Mark III purchased. The definition portion of the contract describes completed-operations hazard as including "property damage arising out of *** reliance upon a representation or warranty ***."

This coverage would be meaningless without the exception to exclusion (a). Yet, this exception merely preserves coverage already granted in the insuring provision. That coverage is subject to the limitations of each and every exclusion. Thus, exclusions (n) and (o) limit the completed operations coverage by excluding damage to the product or work of the insured. Damage to property *other than the insured's own work or product,* arising from breach of a warranty that work will be done in a workmanlike manner, is expressly not excluded under the exception to exclusion (a). In short, "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." (*Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 249, 405 A.2d 788, 796.) The Brochus seek compensation solely for property damage to the house built by Mark III. As such, coverage is limited by exclusions (n) and (o) of the policy. Accordingly, we find that the Brochus' property damage claim is not covered by the policy in question.

Mark III asserts, however, that Western has waived its right to deny coverage under the policy. The appellate court held that waiver had not been established under the facts of this case. Yet, it remanded the cause to the trial court, finding that a factual dispute remained as to the issue of estoppel. For the reasons that follow, we be-

lieve the appellate court was correct in its determination.

Waiver arises from an affirmative act and not by operation of law. It is consensual and consists of the intentional relinquishment of a known right. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 59; 16B Appleman, Insurance Law & Practice sec. 9081 (1981).) A waiver may be express or implied, arising from acts, words, conduct, or knowledge of the insurer. It is unilateral, as no act of the insured is necessary to complete it. Prejudicial reliance by the insured is not required. *Ames v. Crown Life Insurance Co.* (1980), 85 Ill. App. 3d 203, 204.

In the instant case, Mark III relies upon Western's letter of October 28, 1980, to establish the purported waiver. In that letter, Western accepted *defense* of the claim and remarked: "[T]here doesn't appear to be any further question concerning coverage *at this time.*" (Emphasis added.) On November 12, 1980, approximately two weeks later, attorney Sullivan notified the insured that Western was undertaking the defense without any admission as to its liability under the terms of the policy. This letter from Sullivan was addressed to Mark III's private attorney, and it specifically stated that Western was reserving its rights based upon exclusions (n) and (o) of the policy. Sullivan further stated that Mark III had the right to take over complete management of the defense and reject Western's tender of a defense under the reservations stated. Under these facts we fail to see how Western intentionally relinquished its right to deny coverage based upon exclusions (n) and (o) of the policy.

It is possible, however, that Mark III may be able to establish that it was prejudiced by Western's subsequent conduct. An insurer may be estopped from asserting a defense of noncoverage if it undertakes the defense of an action and that undertaking results in some prejudice

to the insured. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 195.) Estoppel refers to an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion; such relinquishment need not be voluntary, intended, or desired by the insurer, but it necessarily requires prejudicial reliance on the part of the insured. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 59.) Whether the insured has been prejudiced is a question of fact. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196.) The burden of establishing that fact rests with the insured and must be proved by clear, concise, and unequivocal evidence. (*Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 72.) Prejudice will not be presumed. *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 196.

Since a genuine issue of fact remains between the parties, the trial court erred in granting summary judgment. (*Econo Lease Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 391.) Accordingly, the appellate court was correct in remanding the cause for determination of this issue.

The remaining contention is that Sullivan's transmittal of the reservation of rights letter gave rise to a conflict of interest. We need not address this issue, however, as it has been waived. Review of the record clearly establishes that this issue was never raised in the circuit court. Further, review of the appellate court briefs reveals that only two issues were presented. These were the coverage and waiver issues discussed above. While the appellate court noted in passing that it saw no conflict arising from Sullivan's actions (122 Ill. App. 3d 125, 134), this remark is insufficient to preserve the issue. It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal. (*Board of Education v. Kusper* (1982),

92 Ill. 2d 333, 343; *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550.) There is yet another reason why we refuse to pass on the merits of this contention. The issue is raised in this court for the first time by the Brochus. Certainly, even if the issue were properly preserved, the Brochus are not the proper party to contest Sullivan's actions, as no attorney-client relationship existed between them. Rather, Sullivan represented Mark III, the Brochus' adversary, in the underlying action.

For the reasons stated above, the judgment of the appellate court is affirmed.

*Judgment affirmed.*