**F/H INDUSTRIES, INC., a Delaware corporation, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Insurance corporation, Defendant.**

No. 85 C 5433.

United States District Court,
N.D. Illinois, E.D.

March 5, 1986.

Gary D. Friedman/Leonard Saphire-Bernstein, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff.

Robert A. Downing, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff F/H Industries, Inc. (formerly known as Scot Lad Foods, Inc. and referred to here as "Scot Lad") filed this diversity suit against National Union Fire Insurance Company of Pittsburgh, PA ("National Union") on the basis of a commercial insurance contract. National Union has now moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the following reasons, National Union's motion is granted.

Scot Lad's complaint contains two counts, one for breach of an insurance contract and one for what it claims is National Union's bad faith refusal to pay or participate in settlement under the insurance contract. The insurance policy provided coverage for claims against corporate officers and directors for tasks done in their official capacities and for which the company provided reimbursement. It also provided direct protection for the officers and directors when not reimbursed by the company, though the parties dispute the application of that aspect of the policy here.[1] National Union first asserts that the complaint is deficient because the insurance policy in question did not apply to the claim for which Scot Lad seeks recovery (the "no coverage argument"). Alternatively, National Union argues that there is no recognized common law action for bad faith denials of insurance claims since Ill.Rev.Stat. ch. 73, ¶ 767 (1983) preempts such actions.

For the purposes of a 12(b)(6) motion, the Court ordinarily assumes the truth of the complaint's allegations and does not look beyond its four corners. However, because the parties here have submitted affidavits and other documents with their memoranda in conjunction with the no coverage argument, we shall consider that aspect of defendant's motion as a Rule 56 motion for summary judgment. *See* Fed.R. Civ.P. 12(b).

The central dispute in this case surrounds the language in an insurance application form submitted to National Union by Scot Lad in conjunction with the expansion of National Union's insurance coverage of Farm House Foods Corporation ("Farm House"), the parent corporation of Scot Lad. Prior to May 31, 1982, Farm House's insurance policy did not cover Scot Lad or its directors and officers. The application,

---

1. In ruling on the present motion, we deal only with the aspect of the policy which provides for reimbursement to the insured company of payments made to indemnify its officers and directors for liabilities incurred in their official capacity. As National Union has pointed out, the policy coverage providing protection directly for the officers and directors does not apply where they have been reimbursed, presumably to avoid double recovery under the policies. *See* Complaint, Exh. A, Directors and Officer [sic] Liability Exclusion(i). Since the parties do not dispute the fact that Scot Lad reimbursed its director in this case, we find that only the company reimbursement policy is relevant here.

submitted by Scot Lad after the policy period had begun,[2] requested Scot Lad to disclose information known by its directors and officers which might lead to claims under the insurance policy. The only relevant questions of the insurance application for the purpose of this motion are numbers 14 through 16, which read:

14. Does any Director of [sic] Officer have knowledge or information of any act, error, or omission which might give rise to a claim under the proposed policy?

[Answer:] No[,] with possible exception as outlined in the attached (Purdy).

15. The Corporation, its Directors and Officers have not been involved in or have any knowledge of any fact or circumstance involving the following which may give rise to a claim under the proposed policy?

(a) Anti-trust, copyright or patent litigation?

[Answer:] No.

(b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state security law or regulation?

[Answer:] No.

(c) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state anti-trust or Fair Trade Law?

[Answer:] No.

(d) Been involved in any representative actions, class actions or derivative suits?

[Answer:] No.

(If any of the above are answered "yes" attach full details)

16. It is agreed with respect to questions #14 and #15 above that if such knowledge or information exists any claim or action arising therefrom is excluded from this proposed coverage.

[Answer:] Yes.

The Purdy matter, disclosed by Scot Lad in answer to question 14, involved a potential suit against Scot Lad and its directors and officers, by C.R. Purdy, a former Scot Lad officer, director and shareholder. Purdy was removed as Chairman and Chief Executive Officer by Scot Lad's Board of Directors in 1978, and Scot Lad later ceased doing business with Purdy as a broker for its food business. Purdy had threatened suit against Scot Lad and its officers, directors and shareholders as a result of these actions. All of this information was disclosed to National Union in a letter from Scot Lad's counsel which was attached to the insurance application. Purdy eventually did file suit against Scot Lad, one of its subsidiaries and John Does I–XX, as a counterclaim in a suit against him by Scot Lad.[3] The suit was settled, and the resulting payment is the liability for which Scot Lad now seeks recovery.

■ National Union asserts that disclosure of this knowledge in the insurance application clearly excluded the Purdy claim from coverage as a result of question 16 and Scot Lad's response. On the other hand, Scot Lad claims that question 16 clearly provides coverage for the Purdy matter and that the language used there merely excludes coverage for matters known of, but not disclosed. We agree with National Union. The language in question 16 is unequivocal in its exclusion of coverage for any claim about which the officers and directors of Scot Lad might have knowledge. It does not say that matters known of but not disclosed would be excluded from the policy, as it easily could have were this the true intent of the insurance company. Rather, it says that if knowledge of a potential claim exists, the policy will not cover any claim arising from it. In our view, the language in question 16 is not reasonably susceptible of more than one meaning, and thus it is not ambiguous as a matter of law. *See Pioneer*

---

2. Though the parties disagree over the nature of this application and its effect on the policy, there is no question that the insurance coverage began as of May 31, 1982.

3. Purdy later amended his state court pleadings to include Joseph Lickteig, a Scot Lad director at the time, in place of the "John Does."

*Trust & Savings Bank v. Lucky Stores, Inc.,* 91 Ill.App.3d 573, 575, 47 Ill.Dec. 36, 38, 414 N.E.2d 1152, 1154 (1st Dist.1980). It does not, however, completely resolve the matter of National Union's liability for payments made to Purdy in settlement of his claims against Scot Lad and its directors and officers.

Scot Lad raises three other arguments in support of its claim that it can recover for the Purdy matter under the insurance policy. First, it asserts that the application containing the coverage exclusion does not necessarily affect the underlying insurance contract since no endorsement to that effect was ever issued. Second, Scot Lad argues that even if this provision initially excluded coverage for the Purdy matter, National Union waived any right to assert this defense. Finally, Scot Lad contends that National Union should be equitably estopped from rejecting coverage because of its actions on which Scot Lad relied in settling the Purdy suit.

In its contention that the application does not affect the terms of the policy, Scot Lad claims that there is a dispute over whether the application acted as a modification of the insurance contract. This argument indicates Scot Lad's fundamental misunderstanding both of insurance law and of the very contract which it entered. In support of its contention that the application was part of the insurance agreement, National Union has submitted the affidavit of William F. Cole ("Cole Aff."), its Midwest Regional Manager, and a copy of a letter sent by Cole to Robert Stewart, the broker who arranged the insurance policy with Scot Lad. These both indicate that National Union merely issued a "binder" effective as of May 31, 1982, and that completion and signing of an "acceptable" application was necessary before a proper endorsement would be added to the already existing

policy of Farm House. Cole Aff. ¶ 5, Exh. A. "The issuance of a binder evidences a complete, temporary, or preliminary contract of insurance effective from that time until issuance of the formal policy or until rejection of the risk...." 12A J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 7227 (1981) (footnote omitted). Binders are frequently issued where the insurance is to become effective before the application has been formally accepted by the insurer. *Id.*

▮ Hence, even though Scot Lad was temporarily covered by the binder, it is clear that the final insurance contract on which the present claim is based was contingent on the application. Furthermore, both the policy and the application contain written statements to the effect that the application is to be considered as part of the insurance contract.[4] The completed and signed application form was received by National Union on August 9, 1982, and endorsement 23, adding Scot Lad to Farm House's policy, was issued on October 1, 1982, prior to the filing of Purdy's claim against Scot Lad. Thus, the insurance contract was in effect, including the terms of the application, by the time the Purdy claim was filed against Scot Lad and prior to Scot Lad's notification of the claim to National Union (not including, of course, the disclosure made in the application). Since the Purdy matter was disclosed by Scot Lad in its application, it was not covered by the policy as qualified by the agreement in question 16 and Scot Lad's answer to that question.

Scot Lad's next attempt to have coverage extended to the Purdy matter is a claim that National Union somehow waived its right to assert the no coverage defense through communications made to Scot Lad pertaining to the Purdy matter. It also argues that National Union should be es-

---

**4.** The Declaration Page to the insurance policy states that "this Declaration Page with Policy Form 8749 and/or Policy Form 8750 *together with the completed and signed application,* constitute the contract...." Complaint, Exh. A (emphasis added). Furthermore, the last page of the application form, which was signed by

representatives of both parties, includes the following statement: "IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND IT WILL BE ATTACHED TO THE POLICY." Defendant National Union's Motion to Dismiss, Exh. A.

topped from raising its defense of no coverage because it acted in such a manner that Scot Lad relied to its prejudice in believing that the Purdy matter would be covered by the insurance policy. In support of these arguments, Scot Lad has submitted numerous exhibits, made up primarily of correspondence between the parties.

■ Initially, we reject National Union's assertion that the doctrines of waiver and estoppel are unavailable to an insured seeking coverage of claims not included in the terms of the original insurance policy. This argument has been rejected by Illinois courts on numerous occasions. *See, e.g. National Discount Shoes, Inc. v. Royal Globe Insurance Co.,* 99 Ill.App.3d 54, 57, 54 Ill.Dec. 263, 266, 424 N.E.2d 1166, 1169 (1st Dist.1981). Having disposed of that matter, we proceed to deal with Scot Lad's claims.

■ Waiver of an exclusion from insurance coverage requires an affirmative act by the insurer consisting of the intentional relinquishment of a known right. *Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 499, 86 Ill.Dec. 493, 499, 475 N.E.2d 872, 878 (1985); 16B J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 9081 (1981). In the course of its attempt to obtain coverage for the Purdy matter, Scot Lad engaged in several communications with National Union. Scot Lad bases its assertion that National Union waived the exclusion of the Purdy matter on one letter written to Sydney Lilly, an executive vice-president of Scot Lad's parent corporation, by Howard Wildman, counsel to National Union (the "Wildman letter"). In that letter, dated December 6, 1984, Wildman stated in response to an inquiry about insurance coverage for the Purdy matter that:

At the present time, National Union has no facts which would indicate that Scot Lads [sic], Redi-Froz and Mr. Lickteig would not be entitled to coverage; however, since the amended counterclaim has only recently been filed, it would appear necessary to await further developments before finally determining the rights and obligations of Scott Lads [sic], Redi-Froz, Mr. Lickteig and National Union under the insurance.

■ In examining this language, we are mindful of the fact that no formal claim under the insurance policy had yet been made when this letter was sent. This type of preliminary communication cannot reasonably be construed as an affirmative act of waiver by National Union intentionally relinquishing its right to enforce the basic terms of the insurance agreement. Since Scot Lad presents no other evidence to support a claim that National Union waived its right to invoke the exclusion for disclosed potential claims, there is no genuine issue of material fact which would be relevant to this aspect of the motion. Indeed, basing a claim of waiver on such an obviously equivocal statement borders on the frivolous. As such, Scot Lad's waiver claim must fail.[5]

■ Scot Lad also argues that National Union should be estopped from asserting its no coverage defense because the latter made representations on which Scot Lad relied to its prejudice in settling the claim with Purdy. Estoppel, as distinguished from waiver, arises by operation of law to abate the rights and privileges of an insurer where it would be inequitable to permit their assertion because of some prejudicial reliance of the insured upon some act, conduct or nonaction of the insurer. *Western Casualty,* 105 Ill.2d at 500, 86 Ill.Dec. at 500, 475 N.E.2d at 879; 16B J.A. Appleman

5. In a supplemental response to the papers filed in this motion, Scot Lad argues that it should be afforded an opportunity to conduct further discovery if the Court should decide this dispute as a summary judgment motion since Scot Lad "did not respond as if the motion was to be converted into one for summary judgment." This rather disingenuous remark comes after Scot Lad submitted a response which included an affidavit and nine separate exhibits purporting to support its waiver and estoppel claims. Because we do not feel that further discovery would be beneficial to anyone at this point, we have proceeded to rule on this motion as one for summary judgment.

& J. Appleman, *Insurance Law and Practice* § 9081 (1981).

The essence of Scot Lad's estoppel claim is that after sending the Wildman letter which "acknowledged coverage" of the Purdy matter, National Union still did not raise its no coverage defense and delayed resolution of the matter by refusing to participate in settlement negotiations. Scot Lad asserts that National Union refused to meet regarding the claim for almost two months despite Scot Lad officials' warnings that delay would be costly. When the parties finally met, Scot Lad asserts, National Union still failed to raise the no coverage argument. Scot Lad asserts that it relied to its prejudice on the Wildman letter and National Union's ensuing conduct in its belief that it was covered under the insurance contract. In response, National Union contends that it was not sufficiently informed to make a determination of coverage and that its delay was occasioned by Scot Lad's failure to forward information necessary for proper claim evaluation. Furthermore, it asserts that Scot Lad has not alleged any facts supporting its argument that it prejudicially relied on a position taken by National Union.

The issue of whether an insured has been prejudiced for the purposes of granting estoppel is one of fact, and the insured shoulders the burden of establishing that fact by clear, concise and unequivocal evidence. *Western Casualty*, 105 Ill.2d at 500, 86 Ill.Dec. at 500, 475 N.E.2d at 879. In the context of a summary judgment motion, the non-moving party must at least raise a genuine issue of material fact regarding the existence of prejudicial re-

liance before denial of the motion would be appropriate. Fed.R.Civ.P. 56(c). Here, there is nothing to support Scot Lad's estoppel claim, even if we were to read the facts in a light favorable to Scot Lad. At most, National Union is guilty of a failure to read the terms of the insurance contract and application more carefully at an earlier stage, though the same could be said for Scot Lad. However, this is not enough to support a valid claim of estoppel since National Union never made any representations, either affirmatively or by omission, upon which a reasonable person would rely in assuming the existence of insurance coverage not provided for in the policy. Scot Lad had not even filed a formal claim on the insurance policy at the time these communications took place. Accordingly, we reject Scot Lad's estoppel claim. Since none of Scot Lad's arguments raise a genuine issue of material fact with respect to the no coverage argument, we grant summary judgment to National Union. Because we find that no insurance coverage for the Purdy claim was available, we also dismiss Scot Lad's claim of bad faith refusal to pay benefits under the policy.[6] It is so ordered.

---

**6.** We find it doubtful that Scot Lad's bad faith claim could survive a motion to dismiss in any event, since we have on a number of occasions, explicitly held that Illinois law does not permit a common law cause of action against an insurance company for bad faith delays or refusals to settle claims. *See, e.g., Aabye v. Security-Connecticut Life Insurance Co.,* 586 F.Supp. 5, 8–9 (N.D.Ill.1984); *Strader v. Union Hall, Inc.,* 486 F.Supp. 159, 162 (N.D.Ill.1980). The Illinois legislature has already enacted a provision which preempts such common law claims. Ill.Rev. Stat. ch. 73, ¶ 767 (1983), and we have no doubt that Illinois law would apply to a tort claim such as this. *See Ledingham v. Blue Cross Plan For Hospital Care of Hospital Service Corp.,* 29 Ill.App.3d 339, 350, 330 N.E.2d 540, 548 (5th Dist.1975), *rev'd on other grounds,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75; *Tobolt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 70, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979) (both discussing bad faith insurance claims as torts); *Ingersoll v. Klein,* 46 Ill.2d 42, 45, 262 N.E.2d 593, 595 (1970) (adopting "most significant relationship" choice of law test for tort claims under Illinois law).