In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3084

JOE PANFIL, *et al.*,

*Plaintiffs-Appellees*,

*v.*

NAUTILUS INSURANCE COMPANY,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-CV-06481 — **James B. Zagel**, *Judge*.

ARGUED FEBRUARY 11, 2015 — DECIDED AUGUST 20, 2015

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Pedro Castro-Cortes was working for Astro Insulation, Inc., a subcontractor of JRJ Ada, LLC ("JRJ"), when he fell through a hole on the property of JRJ. He sued JRJ for personal injury in Illinois state court (the "underlying lawsuit"), claiming that he suffered severe and permanent injury, both externally and internally, as a result of the fall. JRJ is an Illinois limited liability company with two members, Joe Panfil and Renee Michelon. After being

served in the underlying lawsuit, Panfil, Michelon, and JRJ filed a report with Nautilus Insurance Company, seeking coverage under a general commercial liability policy. Nautilus refused to defend, so the plaintiffs brought this action for breach of contract. On summary judgment, the district court determined that Nautilus breached its duty to defend because there was at least the potential for coverage of the underlying lawsuit. We agree and affirm.

## I. BACKGROUND

JRJ sought insurance from Nautilus for a Chicago property that it was remodeling. Nautilus issued a Nautilus Commercial General Liability policy ("the Policy") that listed JRJ's property as the premises to which the insurance applied, but only named Panfil and Michelon (JRJ's two members) as the insureds.

Castro-Cortes worked for Astro Insulation, a subcontractor of JRJ. He was performing insulation work at JRJ's property when he fell through a hole. He sued JRJ, and JRJ requested defense from Nautilus. Nautilus denied coverage on the ground that the underlying lawsuit was against JRJ, but the named insureds in the Policy were Panfil and Michelon. Nautilus also premised its denial on a provision in the Policy called the "Contractor-Subcontracted Work Endorsement." When JRJ requested Nautilus reconsider its denial of coverage, Nautilus identified an additional basis for denial, the "Employee Exclusion."

Because Nautilus did not defend in the underlying lawsuit, JRJ, Panfil, and Michelon brought this action for breach of contract in Illinois state court. Nautilus removed the case to the United States District Court for the Northern District

of Illinois. Both parties filed cross-motions for summary
judgment on the question of whether Nautilus had a duty to
defend JRJ, and Nautilus also sought summary judgment on
the question of whether it had a duty to indemnify. The dis-
trict court granted the plaintiffs' motion and denied Nauti-
lus's motion. First, the court found that the Policy should be
reformed to include JRJ as an insured. (Nautilus does not
appeal this finding.) Second, the court found that Nautilus
breached its duty to defend and, consequently, was es-
topped from asserting policy defenses to coverage. Nautilus
filed a motion to reconsider the summary judgment order on
the ground that it had no duty to defend because the under-
lying lawsuit was not covered by the Policy. The district
court granted the motion insofar as it reconsidered its order,
but confirmed its earlier holding that Nautilus had a duty to
defend. Nautilus appeals.

## II. ANALYSIS

We review both the district court's grant of summary
judgment and its construction of the insurance policy de no-
vo. *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 687 (7th Cir. 2008).
The parties agree that Illinois law governs the interpretation
of the insurance policy here. Under Illinois law,

> An insurer taking the position that a complaint poten-
> tially alleging coverage is not covered by a policy which
> provides that the insurer has the right and duty to de-
> fend any claims brought against the insured cannot
> simply refuse to defend the insured. It must defend the
> suit under a reservation of rights or seek a declaratory
> judgment that there is no coverage. If the insurer fails to
> do this, it is estopped from later raising policy defenses
> to coverage … because the duty to defend is broader
> than the duty to pay.

*Murphy v. Urso*, 430 N.E.2d 1079, 1082 (Ill. 1981). This estoppel doctrine applies only where an insurer has breached its duty to defend. *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999). So, a court first inquires whether the insurer had a duty to defend. *Id.* Relevant here, an insurer has no duty to defend where "there clearly was no coverage or potential for coverage." *Id.* But "[a]n insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Lyerla*, 536 F.3d at 688 (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)). "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint that the allegations fail to state facts which bring the case" even potentially within the policy's coverage. *Id.* (emphasis in original) (internal citations omitted).

The underlying complaint and insurance policy must be liberally construed in favor of the insured. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). When an insurer denies a duty to defend based on an exclusionary clause, its application must be "clear and free from doubt." *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) (quoting *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992)). A provision is ambiguous if it is subject to more than one reasonable interpretation and all doubts and ambiguities must be resolved in favor of the insured. *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930.

Here, it is clear that if Nautilus had a duty to defend, it breached that duty. Nautilus did not seek a declaratory judgment as to coverage and refused to defend the underly-

ing lawsuit on behalf of JRJ. Nautilus argues that it had no duty to defend. We disagree. We cannot say that there clearly was not at least the *potential* for coverage based upon the allegations in the underlying complaint, so Nautilus was obligated to defend. *See Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992).

To reach this conclusion, we must look at the language of the contract. The Policy states that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and it "will have the right and duty to defend the insured against any 'suit' seeking those damages." This comprehensive general liability insuring provision is followed by a series of exclusions, two of which are relevant to this appeal. First, the Contractor-Subcontracted Work Endorsement exclusion states: "This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of work performed by any contractors or subcontractors unless such work is being performed specifically and solely for you." Second, the Employee Exclusion provides:

> This insurance does not apply to:
>
> **e. Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of any insured arising out of and in the course of:
>> a.  Employment by any insured; or
>> b.  Performing duties related to the conduct of any insured's business;

…

> The definition of "employee" in the **Definitions** section is **replaced** by the following:

> "Employee" is any person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the "bodily injury" occurs including, but not limited to … a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor.

Nautilus argues that the underlying lawsuit is clearly excluded from coverage by the Employee Exclusion. Castro was an employee of a subcontractor who was injured during the course of his employment. The plaintiffs do not dispute those facts or that the Employee Exclusion, alone, would preclude coverage. However, they contend that we cannot just look at the Employee Exclusion. The Employee Exclusion must be read alongside all the terms of the Policy, particularly the Contractor-Subcontracted Work Endorsement.

In the plaintiffs' view, under the Contractor-Subcontracted Work Endorsement, coverage for subcontractors is excluded unless the "work is performed specifically and solely" for the insured. Since the injury arose out of work performed by a subcontractor who was working specifically and solely for JRJ, they argue that the Employee Exclusion seemingly precludes coverage completely, while the Contractor-Subcontracted Work Endorsement preserves coverage for specific occurrences like the one in the underlying lawsuit. They contend that ambiguity is created by the contradicting exclusions, and since ambiguities must be resolved in favor of the insured, there is coverage.

If the language in an insurance policy is subject to more than one reasonable interpretation, an ambiguity exists which must be resolved in favor of coverage. *F.D.I.C. v. Am. Cas. Co. of Reading, Pa.*, 998 F.2d 404, 408 (7th Cir. 1993). In our view, reading the two exclusions together, the Policy is subject to more than one reasonable interpretation. Under the first interpretation, the Employee Exclusion contradicts the Contractor-Subcontracted Work Endorsement. "What the policy giveth in one exclusion, the policy then taketh away in the very next exclusion." *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 526 (W. Va. 2013) (citing *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1045 (7th Cir. 1987)). That Nautilus cannot do. *See id.*; *see also Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 619–20 (Fla. App. Ct. 1997) (policy found to be ambiguous and resolved in favor of the insured where policy purported to insure for intentional torts but exclude acts "intended" by the insured). So under this interpretation, we would find coverage.

Under the second interpretation, the Contractor-Subcontracted Work Endorsement, in conjunction with the Employee Exclusion, just means to preserve coverage for injuries to non-"employees" arising out of the work of subcontractors working solely for the insured. The effect of the Contractors-Subcontracted Work Endorsement is to limit any coverage for injury at the construction site to injury arising out of work done by contractors or subcontractors working solely for the insured. And the Employee Exclusion places a second, separate limit on coverage, which further restricts bodily injury coverage to injuries sustained by non-"employees." Coverage still remains for bodily injury to non-"employees" arising out of the work of contractors or

subcontractors working solely for the insured. The cumulative restrictions on coverage provided under the Employee Exclusion and the Contractors-Subcontracted Work Endorsement take away some, but not all, coverage.

The burden of proving that a claim falls within an exclusion rests on the insurer, because "(1) the insured's intent in purchasing an insurance policy is to obtain coverage, therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent, and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision to be clear and specific." *Hurst-Rosche Eng'rs, Inc.*, 51 F.3d at 1342 (citations omitted). In determining coverage, we must construe the policy as a whole. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). As the drafter, Nautilus could have written the Policy to make clear that the Contractor-Subcontracted Work Endorsement preserved coverage for bodily injury *to* non-"employees" only. It did not do so. Instead, we have an endorsement that most naturally reads to preserve coverage for bodily injury arising out of the work of subcontractors where the injury is *to* anyone; it is unlimited. And when read in this manner, it contradicts the Employee Exclusion. What the policy gives in one exclusion, it takes away in the next. The two provisions conflict, so there is an ambiguity which is resolved in favor of JRJ. *See W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 876 (Ill. 1985); *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930.[1]

---

[1] One other point. We seek to ascertain the intention of the parties to the contract, *Outboard Marine Corp.*, 607 N.E.2d at 1212, but we are limited in our ability to do so by this record. We do not know if the $1,785 paid for contractors-subcontracted work in the premium is a reasonable

This is a close case. Nautilus argues that because exceptions to exclusions do not create coverage, the exception in the Contractors-Subcontracted Work Endorsement does not provide an additional basis for coverage such that it could be considered repugnant to the Employee Exclusion. While true that an exception to an exclusion does not provide coverage, it does *preserve* coverage already granted in the insuring provision. *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 656 (Ill App. Ct. 2008). So, as the district court mentioned, it offers some indication as to what the Policy was meant to cover. And a reasonable interpretation of the Contractor-Subcontracted Work Endorsement is that it preserves coverage for injuries to workers at the construction site so long as those workers are working specifically and solely for JRJ. The endorsement does not limit the bodily injury to injuries for non-employees. When policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer. *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005).

We also note that Nautilus argues it has no duty to defend because of a principle it draws from *Brochu*: "If any one of the exclusions applies there is no coverage" and an exception to an exclusion remains subject to and limited by all

---

amount for coverage limited to non-employees. Neither party has presented any evidence regarding standard rates in the insurance industry for coverage for employee and subcontractor injuries at construction sites. And defense counsel could not answer at oral argument whether Nautilus sold separate coverage for employee and subcontractor injuries and how much such coverage usually costs.

other related exclusions. 475 N.E.2d at 876–77. However, we find *Brochu* of little use in deciding this case. In *Brochu*, the insured relied on an exception to support its argument that coverage existed. However, that exception was not intended to apply to the underlying action. *See Brochu*, 475 N.E.2d at 877. So, the exception did not conflict with any other exclusions by preserving coverage which another exclusion excluded. *See id.* But here, it is clear that the exception to the exclusion in the Contractors-Subcontracted Work Endorsement preserves coverage for the underlying lawsuit. And in our view, under one reasonable interpretation, it conflicts with the Employee Exclusion.

We emphasize that the bar to finding a duty to defend is low. The complaint in the underlying lawsuit and the Policy must be liberally construed in favor of the insured. *U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930. Because we cannot say that Castro-Cortes's complaint is not potentially within the coverage of the Policy, we hold that Nautilus had a duty to defend the plaintiffs in the underlying lawsuit.[2]

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] At the time the district court decided the parties' summary judgment motions, the underlying lawsuit was still ongoing. So, upon finding that Nautilus had a duty to defend, the issue of whether Nautilus had a duty to indemnify was not ripe. *See Travelers Ins. Co.*, 974 F.2d at 833 (duty to indemnify arises only after insured becomes legally obligated to pay damages in underlying action). While Nautilus raises the indemnification issue here, it is not properly before this court and remains for the district court to determine.