CINCINNATI INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

ESTATE OF Toni CHEE, et al.,
Defendants–Appellees.

No. 15-3243

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 2016

Decided June 13, 2016

Rehearing and Rehearing En Banc *
Denied July 8, 2016

* Judge Williams did not participate in the con-
sideration of this petition.

James K. Horstman, Attorney, Cray Huber Horstman Heil & Vanausdal LLC, Brian M. Reid, Attorney, Litchfield Cavo LLP, Chicago, IL, for Plaintiff–Appellant.

David Vernon Dorris, Attorney, Dorris Law Firm PC, Bloomington, IL, Daniel G. O'Day, Attorney, Cusack, Fleming, Gilfillan & O'Day, Peoria, IL, for Defendants–Appellees.

Before EASTERBROOK, MANION, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sam Chee was driving and his wife Toni Chee was a passenger in August 2010 when their car slammed into a tree. Toni was seriously injured and taken to a hospital, where she died within a week. Her estate has filed two suits in courts of Illinois: one against Sam accusing him of negligent driving, and the other against the hospital and the attending physicians, accusing them of malpractice. The defendants in the second suit filed third-party actions against Sam, seeking contribution or other recompense from him should they be held liable to the estate. State Farm Mutual Automobile Insurance Company is defending Sam's interests in both suits. Its policy promises indemnity of $250,000 per person (and $500,000 total) for auto accidents. State Farm has offered to pay the policy limits, but its offer has not been accepted because of a dispute about the terms of the release it wants the estate to sign.

The Chees have an excess policy (with a limit of $5 million) issued by Cincinnati Insurance Company, which has denied Sam's request for defense and indemnity. It filed this suit under the diversity jurisdiction seeking a declaratory judgment that its policy does not apply, and it appeals from the district court's adverse decision. 2015 WL 4978711, 2015 U.S. Dist. LEXIS 110002 (C.D. Ill. Aug. 20, 2015).

Cincinnati relies on three parts of its policy, the first of which requires notice. It provides: "You and any other involved insured must see to it that we are notified as soon as practicable of an occurrence which may result in a claim or suit." (We have removed from this and other language the quotation marks that clutter the original and impede comprehension. Defining terms helps make policies clear; punctuation to mark defined terms over and over just makes a mess.) The accident occurred in August 2010, but Sam did not notify Cincinnati until 26 months later—though Toni's estate alerted Cincinnati (via a broker) 16 months after the accident. Sixteen months is not remotely as soon as practicable after Toni's death.

But the notice requirement is a sub-paragraph in a longer provision that specifies the consequence of noncompliance with a list of duties. The opening paragraph provides: "In case of an occurrence, claim or suit you and any other involved insured will perform the following duties. We have no duty to provide coverage under this policy if your or any other insured's failure to comply with the following duties is prejudicial to us." The obligation to provide notice "as soon as practicable" follows and is subject to the prejudice requirement. Cincinnati asserts that the delay in receiving notice could have been prejudicial (evidence might have been lost) but does not identify any concrete prejudice. So the policy tells us that the delay does not affect its duties.

■ Cincinnati's second argument starts from the fact that it issued an excess policy and that State Farm is still defending Sam Chee. Cincinnati maintains that it is entitled to sit on the sidelines until State Farm writes a check. This is not remotely what the policy says, however. It requires the Chees to maintain other coverage of at least $250,000 per person and $500,000 per occurrence. It is undisputed that the Chees did this, though Cincinnati's policy also allowed them to choose self-insurance for the initial layer: "Underlying insurance means the policies of insurance listed in Schedule A ... and the insurance available to the insured under all other insurance policies applicable to the occurrence. Underlying Insurance also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities which would also be insured under this policy." Thus Cincinnati is not liable for the first $250,000 per person (or $500,000 in aggregate) of loss. But the policy does not excuse Cincinnati from supplying a defense or from paying any liability exceeding that amount.

Quite the contrary. The defense clause of Cincinnati's policy provides:

We will have the right and duty to defend the insured against any suit seeking damages because of bodily injury, personal injury or property damage to which this insurance applies. We will have no duty to defend the insured against any suit seeking damages for bodily injury, personal injury or property damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result when:

a. The applicable limit of the underlying insurance and any other insurance have been exhausted by payment of claims; or

b. Damages are sought for bodily injury, property damage or personal injury to which no underlying insurance or other insurance applies.

This is straightforward. If the policy applies to the claim, Cincinnati must defend. Once the applicable limit of underlying insurance has been paid out (by the Chees or the primary insurer), Cincinnati obtains the right to settle the claim or suit. But neither the duty to defend nor the duty to indemnify depends on disbursal of the applicable limit. And for good reason. If another insurer's payment were essential to Cincinnati's duties, then the bankruptcy—or just the unreasonable conduct—of the primary insurer would leave the insured bereft of coverage. Who would buy such a policy? No matter; Cincinnati did not *write* such a policy.

■ This leaves Cincinnati's argument that its policy does not apply at all because both Sam and Toni are insureds. An exclusion says that "[t]his insurance does not apply" to any "[b]odily injury or personal injury to any insured." Toni Chee was an

insured, and the parties agree that her estate also is an insured. But the exclusion has an exception "[w]hen a third party acquires a right of contribution against you or any relative." This exception is required by 215 ILCS 5/143.01(a). Toni's estate has sued a hospital and some physicians, who are seeking contribution from Sam. This led the district court to conclude that the exception overrides the exclusion and leaves the policy fully applicable.

Let us take this in stages. Suppose there were only one suit in state court: Estate of Toni Chee v. Sam Chee. Then the exclusion would apply, because both litigants are insureds under Cincinnati's policy. Exclusions such as this reflect a widely held belief that intra-family suits are designed not to settle accounts among family members but to extract money from third parties—that, but for insurance, there would be no litigation at all. To avoid being seen as a honeypot to be drained by cooperation between family members (or between one family member and an estate that will principally benefit other family members, perhaps even Sam himself), an insurer puts these familial claims outside the policy. That reduces moral hazard: the tendency of insurance to alter the behavior of the insured persons in a way that materially increases the insurer's expected payout.

■ The estate's second suit, against the hospital and physicians, changes matters. It is the sort of litigation that would occur even if the Chees were uninsured. Providing coverage therefore does not pose a problem of moral hazard that the insurer needs to guard against. Indeed, an insurer would want to encourage suits against third parties, because recovery may reduce the insurer's maximum exposure. But a suit against a third party poses a risk that the third party will try to recover from the insured person—hence the exception, which says that Cincinnati does provide coverage when a third party has a right of contribution against an insured or an insured's relative. This means that in the second state-court suit, Estate of Toni Chee v. Medical Providers, Cincinnati must provide a defense, and if the medical providers win a judgment against Sam Chee then Cincinnati may have to indemnify him for that award. The money will go to the third parties, not to Sam, and the prospect therefore does not create moral hazard.

The district court held that, because the medical defendants in Suit #2 want contribution from Sam, Cincinnati must provide a defense and indemnity in Suit #1 as well. That's not what the exception says, however. It requires Cincinnati to defend and indemnify the third-party claim, not the intra-family or intra-insured claim. Otherwise all the exclusion would accomplish would be to induce the insured to file a frivolous third-party claim, which predictably would lead the third party to try to deflect liability back on the insured. If that process overcame the exclusion of coverage for suits among insureds, it might as well be omitted from the policy. Moral hazard would burgeon, implying higher prices for coverage, if insurers were willing to provide any coverage—moral hazard can cause markets for insurance to collapse.

Illinois law supplies the rule of decision in this diversity litigation. If Illinois had announced that 215 ILCS 5/143.01(a) and language such as that in Cincinnati's policy require insurers to defend and indemnify all suits whenever any one of them entails a request for contribution, then our task would be to apply that understanding until Illinois changed the statute and insurers revised their policies. But Sam's brief does not identify any decision of an Illinois court reading language like that in Cincinnati's policy as overcoming an intra-in-

sured-suit exclusion for all purposes once any third party requests contribution. We could not find a pertinent decision from any state's judiciary, so we are on our own. We think that the exception is best read as limited to third-party demands for contribution and does not affect claims by one insured against another.

The district court observed that the two suits have been consolidated and thought that this means they should be treated as one suit. Cincinnati replies that they have been consolidated for discovery and other pretrial proceedings, not for decision on the merits. We think that the nature of the consolidation does not matter. If as we have concluded the contribution exception for third-party claims applies only to claims *by* the third parties, it doesn't matter how many suits are pending, or in how many courts. If the estate had named Sam, the hospital, and the physicians in one suit, joining them under the Illinois equivalent of Fed. R. Civ. P. 20(a)(2), still the exception for contribution would apply only to the medical defendants' claims against Sam. As a practical matter joinder might require Cincinnati to defend the whole suit, but it would not call for indemnity of a judgment that the estate obtained directly against Sam.

What we have said so far shows that the duty of indemnity, if any, depends on what happens in the underlying litigation. That makes it inappropriate to try to resolve that matter in an anticipatory action seeking a declaratory judgment, beyond stating the point that neither defense nor indemnity is appropriate in the estate's suit against Sam. Trying to pin down what duties of indemnity Cincinnati might owe in the other suit under various possible outcomes would be premature. See *Panfil v. Nautilus Insurance Co.*, 799 F.3d 716, 722 n.2 (7th Cir. 2015); *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d

580, 583–85 (7th Cir. 2003); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152 (7th Cir. 1995); *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 833–34 (7th Cir. 1992).

The judgment of the district court is affirmed to the extent that it requires Cincinnati to defend Sam's interests in the suit between the estate and the medical defendants. Otherwise the judgment is reversed, and the case is remanded for the entry of a declaratory judgment consistent with this opinion.