**WILLIS CORROON CORPORATION,**
**Plaintiff–Appellee,**

v.

**THE HOME INSURANCE COMPANY**
**and Risk Enterprise Management**
**Limited, Defendants–Appellants.**

No. 99–1799.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1999

Decided Feb. 10, 2000

Rehearing and Rehearing En Banc
Denied March 29, 2000.

Rebecca Jackson (argued), Bryan Cave, St. Louis, MO, for plaintiff-appellee.

Robert M. Chemers, David S. Osborne (argued), Pretzel & Stouffer, Chicago, IL, for defendant-appellant.

Before FLAUM, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This action, which should be a run-of-the-mill dispute over insurance coverage, has taken several bad turns, necessitating a court trial on whether The Home Insurance Company was estopped from denying coverage to its insured, the Willis Corroon Corporation. The result was a finding of estoppel. Furthermore, Willis Corroon was granted attorney fees, costs, and a statutory penalty under § 155 of the Illinois Insurance Code, 215 ILCS § 5/155.

The Willis Corroon Corporation is, among other things, an insurance broker. It had a general liability policy with a $1 million limit with The Home and a $7 million umbrella policy, both with exclusions for claims based on professional services. It also had a professional liability policy with an outfit called the Friar's Street Insurance Limited. The dispute here grows out of Willis Corroon's work as the project safety manager (its employee, Thomas Heuer, was also sued) on a construction site of the Scott Joint Use Airport project in St. Clair County, Illinois. A woman named Lynn Zurliene was hit by a car while she was acting as flag person at the site. She filed suit in St. Clair County circuit court against Willis Corroon, Heuer, and other defendants. Thinking that the incident implicated its duties as project safety manager, Willis Corroon notified The Home of the claim and tendered its defense, requesting that The Home provide coverage for itself and Heuer.

The Home undertook the defense with a reservation of rights, and attorney Jerome C. Simon was hired and put on the case; Risk Enterprise Management Limited (REM) was given the management and administration of the defense. The Zurliene case was set for trial on December 16, 1996. At no time prior to trial was Simon given settlement authority, even though he asked for it and advised The Home that settling would be wise. The reserve The Home set aside for the suit remained extremely low—in March 1996 it was $5,000, even though someone from The Home valued the case at up to $110,-000. At the same time, Zurliene was making demands for $3 million. Also during

the pendency of the case, The Home refused to pay the fees of an expert witness Simon wanted to use. Late in the case, motions for summary judgment were filed, based on a defense that workers compensation was Zurliene's exclusive remedy; the motion was not resolved because it was untimely.

On December 6, 1996—just 10 days before the scheduled trial date, The Home/REM sent attorney Simon a letter advising him that he committed legal malpractice when he failed to timely raise the workers compensation defense. Simon was advised to notify his malpractice insurer that it could be responsible for the judgment or settlement in the Zurliene action. Simon was understandably shocked, and on December 9 he asked the court for permission to withdraw from the case. The trial judge found The Home's conduct questionable and ordered it into court on December 12 to explain itself. At a hearing on December 12, Simon and local counsel were granted leave to withdraw from their representation of Willis Corroon. Although it found a lawyer to represent its employees at the hearing, The Home did not obtain alternate representation for Willis Corroon, and no one asked for a continuance of the trial date. With everything in disarray, the case was settled when The Home paid Zurliene $2 million.

Meanwhile, on December 10, 1996, one day after Simon's request to withdraw from the Zurliene case, The Home filed a declaratory judgment action against Willis Corroon in the Middle District of Tennessee, seeking a declaration that it had no obligation to pay any judgment rendered against Willis Corroon in the Zurliene case. On December 12, 1996, Willis Corroon filed its own declaratory judgment action against The Home and REM in St. Clair County circuit court. That case was removed to the United States District Court for the Southern District of Illinois. On November 14, 1997, the court in Tennessee transferred its case to the Southern

District of Illinois. The two cases were consolidated and are now before us.

In the district court, the cases spawned motions, including motions for summary judgment. Judge G. Patrick Murphy found that genuine issues of material fact existed "as to whether Willis Corroon was prejudiced by REM/The Home's conduct." He determined to "conduct a trial on the estoppel issue before reaching the coverage issue because if the Court were to find that REM/The Home was estopped from denying coverage (i.e., that Willis Corroon was prejudiced by REM/The Home's conduct), the Court would not need to decide the coverage issue." On January 11, 1999, a bench trial was held on that issue. Judge Murphy found that The Home's conduct of the Zurliene case was, among other things, "ham-handed," and "witless," and that it was estopped from asserting policy defenses. Judge Murphy stated:

> First, REM/The Home's conduct prejudiced Willis Corroon in that REM/The Home's actions on December 6, 1996, deprived Willis Corroon of effective counsel ten days before trial in the Zurliene action. Second, despite repeated requests by Simon and Scott, REM/The Home refused to grant settlement authority prior to December 6, 1996, which deprived Willis Corroon of any opportunity to settle the case within the limits of the primary policy. Third, REM/The Home deprived Willis Corroon of a crucial expert witness by failing to pay the expert. Fourth, REM/The Home effectively doubled the settlement value of the case by its ham-handed and witless management on the eve of trial. This was occasioned by panic when REM/The Home finally realized that its evaluation of the case and corresponding reserves were unrealistic and erroneous.

In addition, because The Home's conduct was also "vexacious" and "unreasonable," Willis Corroon was entitled to relief under § 155 of the Illinois Insurance Code in the amount of $163,653.96.

On appeal, The Home contends that there can be no equitable estoppel when the insurer defends, as it did, under a reservation of rights. Furthermore, it says that the fact that it sought a declaratory judgment regarding its duty to defend the lawsuit prevents the application of the doctrine of estoppel.

■ Under Illinois law (all agree that Illinois law controls this dispute), when an insurer believes that a policy does not provide coverage, it can provide a defense under a reservation of rights or obtain a declaratory judgment as to its rights and obligations. *Insurance Co. of Illinois v. Federal Kemper Ins. Co.*, 291 Ill.App.3d 384, 225 Ill.Dec. 444, 683 N.E.2d 947 (Ill. App.1997). When the insurer chooses to defend its insured it must provide an effective defense, and it must not put its own interests ahead of those claiming to be insureds. *Briseno v. Chicago Union Station Co.*, 197 Ill.App.3d 902, 145 Ill.Dec. 426, 557 N.E.2d 196 (Ill.App.1990). If the insurer fails to meet these obligations, and the insured is prejudiced, the insurer can be estopped from asserting policy defenses. *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24 (1976).

Most often a claim of estoppel is made when the insurer has failed entirely to provide a defense, has provided a defense without reserving its rights, or has failed to seek a declaration of its rights: "the insurer must either defend under a reservation of rights or seek a declaratory judgment that there is no coverage; if the insurer fails to do so, it is estopped from raising policy defenses ...." *Sportmart, Inc. v. Daisy Mfg. Co.*, 268 Ill.App.3d 974, 206 Ill.Dec. 355, 645 N.E.2d 360, 364 (Ill. App.1994); *see also Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1182 (7th Cir.1994). On appeal, The Home turns this principle on its head. Not only does an insurer have to provide a defense under a reservation of rights or file for declaratory judgment or it can be estopped from asserting its defenses, but, The Home argues, so long as the insurer has done either of those things, estoppel can never lie.

■ The argument is overly sweeping. It is inconceivable that Illinois would allow a reservation of rights to give an insurer license to prejudice its insured however it wanted. And in fact it does not. Illinois courts have found estoppel even when there has been a reservation of rights. In *Western Casualty & Surety Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985), the court found that "Western was reserving its rights based upon exclusions (n) and (o) of the policy." At 878. For that reason, the company was found not to have waived its policy defenses. However, whether estoppel applied was said to involve different considerations. Despite the reservation of rights, the court specifically found that the insured "may be able to establish that it was prejudiced by Western's subsequent conduct. An insurer may be estopped from asserting a defense of noncoverage if it undertakes the defense of an action and that undertaking results in some prejudice to the insured." At 879. In *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1136 (1999), the court, in discussing a failure to provide a defense, said that an "insurer cannot simply abandon its insured." As this case makes clear, there is more than one kind of abandonment. Given the facts before us, which as the district court found them are not clearly erroneous, it is not error to find that The Home is estopped from presenting policy defenses.

■ The Home also argues, of course, that its filing of an action for a declaratory judgment prevents estoppel from being applied. Furthermore, it says, the fact that the declaratory judgment action was not filed until a few days before the scheduled trial date is not relevant. It is true that the Illinois Supreme Court has recently said that an "insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is

resolved." *State Farm Fire & Cas. Co. v. Martin*, 710 N.E.2d 1228, 1232 (1999). In *Martin* the insurance company filed its declaratory judgment action soon after being notified of a wrongful death claim against its insured. The insured was accused of hiring someone to destroy a building he owned; the building was set on fire and two people died. The declaratory judgment action was stayed pending the conclusion of the related criminal case, and as a result of the stay no decision was made in the declaratory judgment action until after a default judgment had been entered on the wrongful death claim. In deciding that the failure to obtain a ruling in the declaratory judgment action prior to the resolution of the underlying case did not estop the insurance carrier from asserting policy defenses, the court was trying to prevent a race to judgment or a situation in which an insurer always had to provide a defense for fear the declaratory judgment actions would not be timely resolved.

That situation bears little resemblance to the one before us. If anything, our situation comes closer to that in *Ehlco*, in which the Illinois Supreme Court stated that where "an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law." At 1138.

Here, The Home mishandled a defense which it undertook under a reservation of rights. The company created a situation in which its insured, Willis Corroon, was left in the lurch. Then, after it was clear that it had caused the loss of Willis Corroon's ability to defend itself and a settlement was desperately required, The Home filed a declaratory judgment action in a district court in another state. On these facts, were we to say that because The Home reserved its rights and filed a declaratory judgment before a verdict or settlement was reached in the underlying action it cannot be estopped from contesting coverage, we would be allowing a blatant manipulation of the law. It would be to encourage the worst possible behavior. The Home failed to provide an adequate defense, in fact completely undermined the defense which it ostensibly provided; the company cannot be saved by a twelfth-hour filing of a declaratory judgment action.

■ Because The Home is estopped from presenting defenses to coverage, it follows that there is coverage, and we need not consider The Home's arguments regarding why coverage is lacking. The argument that damages are improper under 215 ILCS § 5⁄155 also need not detain us. The Home was estopped to assert policy defenses, and the judge found that the company acted in bad faith and that its conduct was "vexatious and unreasonable." A decision to award attorney fees and costs under the statute is reviewed for an abuse of discretion. Finding none, we conclude that the award was appropriate. *See Ehlco.*

■ The Home also contends that it was an abuse of discretion for the district court to deny the company leave to file an amended complaint asserting a "reverse bad faith" claim. Even assuming that such a cause of action exists (a very doubtful assumption), we disagree. The court found that there was "absolutely no evidence of bad faith or wrongdoing on the part of Willis Corroon or any of the attorneys who represented Willis Corroon in the underlying action."

Finally, before leaving this appeal we want to emphasize that it's very helpful to us when attorneys write their briefs with precision and clarity. A statement like this, from The Home's brief (one of several we could quote), falls short of the mark:

> Apparently, Willis Corroon urges this Court to conflate the elements of estoppel for the wrongful refusal to defend with the elements for equitable estoppel, producing an alchemic cause of action which strips an insurer of its policy de-

fenses for taking actions in defense of the underlying case which cause the settlement value to increase from some arbitrarily-selected earlier point in time where the insurer could have settled for less.

The Home's reply brief, at 7.

Also troubling is a form of subtle misstatement which exists in The Home's briefing, an example of which we now note. The Home's first argument in support of its appeal is, as presented in bold type: "The District Court Erred in Finding That The Home Was Estopped to Contest Coverage Under *Brochu* as a Matter of Law." Subdivision A of that argument, also in bold type, is "The Home Defended Under a Reservation of Rights, Thus There Can be No Equitable Estoppel." The argument continues by saying that the line of authority extending from *Peppers* "(upon which *Brochu* relied) *only* applies where the insurer has undertaken the defense of the insured *without* reserving its rights[.]" (Emphasis in the original.) But to the contrary, as we have already discussed, *Brochu* itself is a case in which there was clearly found to be a reservation of rights, and estoppel was found to apply. It would be one thing for The Home to argue that *Brochu* is an anomaly or that it is simply wrong, but it is entirely another thing to cite the case and then misstate what it says. At argument, the sleight of hand continued. Counsel for The Home, while now perhaps acknowledging a reservation of rights might exist in *Brochu*, said that there was a question as to whether there was a proper reservation of rights, implying, we believe, that it was doubtful that *Brochu* was, in fact, a case in which estoppel was found despite a clear reservation of rights. It is true that the insured in *Brochu* contested whether there was an effective reservation of rights, but the supreme court clearly and unmistakenly found there was a reservation of rights:

This letter from Sullivan was addressed to Mark III's private attorney, and it specifically stated that Western was reserving its rights ....

At 878. Despite the reservation of rights, the supreme court found that estoppel applied. To say otherwise is just not true.

We understand that sometimes misuse of precedent occurs inadvertently. But it goes without saying that attorneys should make every effort to ensure that their statements to us (or any court, actually) are accurate.

The decision of the district court is AFFIRMED.