**HOME INSURANCE COMPANY,**
**Plaintiff,**

v.

**THREE I TRUCK LINE,**
**INC., Defendant.**

**No. 98 C 7343.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 3, 2000.

Robert Marc Chemers and Michael A. Clarke, Pretzel & Stouffer, Chicago, IL, for plaintiff.

John Mathias, Jr., Robert Markowski, Christopher Dickinson & Seth Anderson,

Jenner & Block, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

The Home Insurance Company ("Home") has brought this diversity of citizenship action against Three I Truck Line, Inc. ("Three I"), seeking a declaratory judgment that Home has no duty or obligation to indemnify Three I for its share of liability stemming from any judgment or settlement rendered in two Cook County Circuit Court tort actions, *Vasilion v. Hapag–Lloyd (America), Inc.*, No. 95 L 2208 and *Wegner v. Three I Truck Line, Inc.*, et al., No. 95 L 2797 (those cases were consolidated for trial and are referred to here collectively in the singular form "Cook County Action"). Home bases its effort to deny coverage under its excess liability policy ("Policy") on Three I's alleged breach of the Policy's notice provision.

Three I has filed a Fed.R.Civ.P. ("Rule") 56 summary judgment motion, and each party[1] has complied with this District Court's related LR 56.1.[2] For the reasons stated in this memorandum opinion and order, Three I's motion is granted and Home is declared to have the obligation set out in the *Conclusion*.

### Summary Judgment Standards

Familiar Rule 56 principles impose on Three I the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). As *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) has more recently quoted from *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994):

> A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

As with every summary judgment motion, this Court accepts nonmovant Home's version of any disputed facts. What follows in the *Facts* section is culled from the parties' submissions, with any differences between them resolved in Home's favor. Other relevant facts derived in the same manner, but that fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

### Facts

This insurance coverage dispute arose after the Cook County Action was brought against Three I and other defendants. Three I retained the Cedar Rapids, Iowa law firm of Moyer & Bergman in connection with the Cook County Action, while Three I's primary insurer (Connecticut Indemnity Company) retained the Chicago law firm of Dowd & Dowd to serve as Illinois counsel (T.St. ¶¶ 10–11). Until shortly before trial the Dowd & Dowd

---

1. Although counter-defendant Risk Enterprise Management, Ltd. ("REM") has chosen to join in Home's response, for simplicity's sake this opinion refers only to Home as the nonmovant because Three I's motion targets the Complaint filed solely by Home. In any event, because REM is in privity with Home, it too is bound by this opinion's declaration of rights.

2. LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. Where only Three I's LR 56.1(a) statement ("T.St.¶__") is cited, that reflects (unless otherwise stated) that Home either has admitted or is deemed to have admitted (see LR 56.1) Three I's assertions. Otherwise Home's LR 56.1(b)(3)(A) response is cited "H.St. ¶__," and Home's LR 56.1(b)(3)(B) statement of additional facts is cited "H.Add.St. ¶__." This opinion employs the same "T." and "H." abbreviations in referring to the parties' memoranda.

attorneys were preparing Three I's defense (*id.* ¶ 12).

Apparently Three I first notified Home (which it will be recalled was the excess insurance carrier) of the Cook County Action shortly before its trial was scheduled to begin, and Home then assigned claims analyst Raymond Carroll ("Carroll") to the Three I claims sometime before (or perhaps on) October 12, 1998.[3] About that same date Carroll informed a Moyer & Bergman attorney that Home would be assigning coverage counsel due to the perceived late notice issue[4] and that Home was reserving its rights. Because Carroll was aware from his initial review of the policy that Home had no duty to defend Three I's claims, he concluded that Home had two options: either to disclaim coverage outright or to handle the case under a reservation of rights. Based upon his review of the claim, Carroll also anticipated coverage litigation against Three I and decided that unless Home's insurance coverage counsel were to recommend against it, he would recommend filing a declaratory action (T.St. ¶¶ 13–17, H.Add.St.¶ 2).

Also about October 12 Home engaged Chicago law firm Williams & Montgomery as coverage counsel, but it then decided within the week to engage that firm instead to enter an appearance as additional defense counsel in the Cook County Action. Three I agreed to Williams & Montgomery's appearance on its behalf. Home then engaged the Chicago law firm of Pretzel & Stouffer as coverage counsel (T.St. ¶¶ 18–21).

Sometime between October 12 and October 19 Home advised Three I that it wanted Williams & Montgomery rather than Dowd & Dowd to take the lead role in defending the Cook County Action (*id.* ¶ 22). Pretzel & Stouffer then sent Three

I a letter on October 22 stating that the notification of the Cook County Action was "untimely and may constitute a breach of the notice condition," that Home had no duty to provide a defense but that it did have a right to participate in the defense, and that all of Home's rights and defenses under the policy "are reserved" (*id.* ¶ 23). Despite that limited reference to Home's right to *participate* in the defense, Home then proceeded to notify Dowd & Dowd on or about October 30 that its services were not required and that Home would not even pay any of its fees for attending the trial (*id.* ¶ 27).

Meanwhile, during the pre-trial motion practice on October 26 and 27 Williams & Montgomery did not present any of the motions in limine that had been prepared by Dowd & Dowd with respect to plaintiffs' damages evidence, nor did Williams & Montgomery object to any of the Vasilion plaintiffs' motions in limine. Williams & Montgomery also presented no argument during its opening statement at trial contesting the amount of plaintiffs' damages claims, nor did it cross-examine Vasilion's two expert witnesses as to damages (*id.* ¶¶ 24–28).

On November 5 Pretzel & Stouffer sent Carroll a proposed Complaint for Declaratory Judgment on the late notice issue that was "ready for filing" and stated that the firm would not file suit until Carroll advised in writing that it should do so (*id.* ¶ 29). Plaintiffs rested their case in the Cook County Action on November 10, and Pretzel & Stouffer again wrote to Carroll, specifically recommending that Home file the declaratory judgment lawsuit before the end of the trial in the Cook County Action (*id.* ¶¶ 30–31).

> The insured, upon knowledge of any accident or occurrence, whichever is applicable, involving injuries or damages, which, without regard to liability, are likely to give rise to a claim hereunder, shall provide prompt written notice to the Company.

---

**3.** Because virtually all of the relevant occurrences also took place during 1998, any further date references without a year designation denote 1998 events.

**4.** In part the Home–Three I Policy read (T.St. ¶ 7):

When it came time for Three I and other defendants to present their case-in-chief in the Cook County Action, Williams & Montgomery did not call any of the three expert witnesses that Dowd & Dowd had engaged on damages-related issues, nor did it engage or present any other expert witnesses. Williams & Montgomery also did not contest the amount of plaintiffs' damage claims during closing arguments (*id.* ¶¶ 32–33). On November 17, after the Cook County Action's closing arguments but before the jury had returned with a verdict, Home filed its Complaint for Declaratory Judgment against Three I in this federal action (*id.* ¶ 34).

On November 19 the jury returned a verdict against Three I and its co-defendants for more than $42.5 million, finding that Three I was 55% at fault. It awarded the Vasilions as much money as, or even more money than, their own lawyers had requested for each damages category (*id.* ¶ 35). According to an April 4, 2000 *Chicago Daily Law Bulletin* article, Williams & Montgomery have ultimately settled the Cook County Action (then on appeal) for approximately $31 million, of which Three I's share is approximately $19 million. As its ultimate freeze-out of Three I from any substantive involvement, Home had earlier barred Three I's participation in those settlement discussions.

### Estoppel

Three I argues that Home is estopped from asserting a late notice defense under Illinois' estoppel doctrine[5] because it assumed control of Three I's defense and caused prejudice to Three I. Home counters that it may assert the late notice defense because (1) it defended Three I under a reservation of rights, (2) it filed a suit for declaratory judgment and (3) Three I suffered no prejudice.

■ It is undisputed that under the Policy Home had no duty to defend the claims against Three I (T.St. ¶ 15). Although the estoppel doctrine typically does not apply where the insurer has no duty to defend an insured (*Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 186 Ill.2d 127, 151, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1135 (1999)), where the insurer does undertake the defense of an action against the insured and causes some prejudice to the insured it may be estopped from asserting policy defenses (*Willis Corroon Corp. v. Home Ins. Co.,* 203 F.3d 449, 452 (7th Cir.2000); *Maryland Cas. Co. v. Peppers,* 64 Ill.2d 187, 195, 355 N.E.2d 24, 29 (1976)). Home at least seems to acknowledge implicitly that despite its lack of duty to defend, because it nevertheless undertook the defense of the Cook County Action it may be estopped from asserting its late notice defense if Three I was prejudiced by Home's defense (H.Mem.3).[6]

■ Before this opinion turns to that issue of prejudice and how it plays out in this case, this Court will quickly address the impact on Home's late notice defense of its having filed a complaint for declaratory judgment. *Ehlco,* 186 Ill.2d at 157,

---

5. Because both sides have argued only Illinois law in their submissions to this Court, this decision looks to Illinois as the source of law as to the enforcement of insurance policy late notice provisions (*Employers Ins. of Wausau v. Bodi–Wachs Aviation Ins. Agency, Inc.,* 39 F.3d 138, 141 n. 2 (7th Cir.1994), quoting *Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 426 (7th Cir.1991) ("when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.")).

6. In *Willis Corroon* the selfsame insurer that has advanced its untenably overreaching arguments in this case—Home—had asserted

that either a reservation of rights or a declaratory judgment action insulated an insurer from any estoppel holding, effectively giving it a "license to prejudice its insured however it wanted" (203 F.3d at 452). And it did so in the teeth of both *Ehlco* and earlier Illinois cases. Needless to say, our Court of Appeals quickly dispatched that outrageous position as "overly sweeping" (*id.*). One thing that this lawsuit has accomplished is to send this Court back to its insurance broker to make sure that none of its own coverage of any sort has been placed with Home. One instance of such tactics is bad enough—but two?

237 Ill.Dec. 82, 708 N.E.2d at 1138 (applying estoppel doctrine in the late-notice-defense context) has relatedly held:

> Where an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law.

This Court's February 23, 2000 Supplemental Memorandum Order at 4 has already observed that because Home deliberately waited to file its already-prepared federal complaint for declaratory judgment until after the Cook County Action had been sent to the jury, it "was too late for Three I to do anything but sit by helplessly and await the results of those jury deliberations." No material difference exists between Home's timing and that of the insurance company in *Ehlco,* which waited until after the case had settled to file its complaint. As a matter of law, Home's filing of a complaint for declaratory judgment was too late to preclude the potential application of estoppel doctrine to extinguish Home's late notice defense.

H.Mem. 11–12 attempts to find solace in Illinois caselaw holding that an insurer need not file a timely declaratory judgment action to preserve its late notice defense where it defends a suit under a reservation of rights (see, e.g., *State Farm Fire & Cas. Co. v. Martin,* 186 Ill.2d 367, 373–74, 238 Ill.Dec. 126, 710 N.E.2d 1228, 1231–32 (1999)).[7] Because Home defended the Cook County Action under a reservation of rights, the question becomes whether Home's ensuing defense prejudiced Three I so that Home's reservation of rights can no longer save it from application of the estoppel doctrine (see *Willis Corroon,* 203 F.3d at 452, citing *Ehlco,* 237 Ill.Dec. 82, 708 N.E.2d at 1136 and *Western Cas. & Surety Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985)). And in that regard it is useful to understand just why an insurer's reservation of rights *may* insulate a late notice defense against an insured's claim of estoppel—and relatedly why such a reservation may not invariably serve as an amulet to ward off such a claim.

By reserving its rights, an insurer puts an insured on notice that it cannot point to the insurer's conduct in connection with the underlying litigation (most frequently by taking over the defense) as somehow acknowledging the existence of coverage under the policy.[8] At that point the insured is entitled to rely on any lawyer designated by the insurer to conform to the obligation of undivided loyalty with which every lawyer-client relationship is instinct. If there are concerns on that score, the insured is alerted to the need to consider other alternatives—such as suggesting that the insured's own counsel be designated by the insurer to handle defense of the underlying case, or perhaps the retention of its own counsel as added counsel[9]—against the backdrop of not

7. T.Mem. 10–11 makes the ill-conceived and unsupported argument that because Home had no duty to defend the claims asserted against Three I, that somehow prevented it from preserving its policy defenses through a reservation of rights. But where an insurer has no duty to defend, it also has no duty to reserve its rights (at least where it does not actually undertake the defense despite its lack of obligation to do so). Failure to reserve rights in such circumstances does not result in an estoppel (*International Ins. Co. v. Sargent & Lundy,* 242 Ill.App.3d 614, 633, 182 Ill.Dec. 308, 609 N.E.2d 842, 855 (1st Dist. 1993)). H.Mem. 4 accurately points out:

> The fact that The Home, an excess carrier with no duty to defend, did *more* than what was required and reserved its rights hardly leads to the conclusion that the reservation was ineffective.

8. If the insurer has not taken over the defense (for example, where it has no obligation to do so), of course the occasion for a notice of reservation of rights as such disappears. It is unnecessary for present purposes to determine what if anything an insurer must do in such circumstances to apprise its insured that it has not agreed to cover the underlying claim.

9. It is worth repeating that Home did initially insert Williams & Montgomery into the Cook County Action as counsel in addition to Dowd

wishing to forfeit coverage on failure-to-cooperate grounds.

So it is that an insurer's stated reservation of rights when it undertakes the defense of a claim against the insured (whether or not obligated by its policy to provide such a defense) may indeed preserve all of its stated policy defenses (noncoverage, late notice or what have you). Or to look at that proposition from the other end of the telescope, under such circumstances the insured cannot claim that the mere assumption of the underlying defense creates an estoppel against the insurer's advancing such policy defenses. But where the insurer's subsequent conduct in undertaking and carrying out the defense of the underlying action essentially subverts the insured's ability to protect its own interests, the insurer will indeed be estopped from asserting policy defenses against the insured.

That then provides the matrix for evaluating Home's argument (citing *Willis Corroon*, 203 F.3d at 452) that to demonstrate prejudice *Three I* must prove that Home put its own interests ahead of those of Three I, that Home mishandled the defense and that Three I was prejudiced by the defense. But there are two problems with Home's use of what it thus urges as the *Willis Corroon* test.

First, conventional wisdom teaches that Illinois law is what the Illinois courts say it is, not necessarily what federal courts may say about it. And that is of course particularly true where the federal authority sought to be relied upon has expressed its view of Illinois law in a context materially different from the one now at issue. Here this Court is obligated, under the mandate of *Erie v. Tompkins*, to apply the standards announced by the *Illinois* courts for determining prejudice. Moreover, analysis shows that the pronouncement of Illinois law in *Willis Corroon* does not require, in the context of this case, the multistep demonstration of prejudice that Home suggests.

 Under Illinois law it is true that Three I bears the burden of establishing by clear, concise and unequivocal evidence that it was prejudiced by Home's assumption of the defense (*Brochu*, 105 Ill.2d at 500, 86 Ill.Dec. 493, 475 N.E.2d at 879). But what is most relevant to what took place in the Cook County Action is what the seminal decision in *Peppers*, 64 Ill.2d at 196, 355 N.E.2d at 29 (still the leading Illinois case, regularly cited by later cases including *Brochu* ) announced as the controlling principle on that score *after* stating that "[p]rejudice will not be conclusively presumed from the mere entry of appearance and assumption of the defense":

> If, however, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage.

So the factual inquiry becomes not whether Three I could somehow manage to *prove* that Home's defense (or lack of it) caused a less favorable outcome for Three I—after all, how is it possible for Three I to make that demonstration (or for this Court to make that determination) after the fact and without a window into the jurors' minds?—but rather whether Home usurped control of the defense from Three I.

& Dowd, then within a couple of days decided that Williams & Montgomery would replace Dowd & Dowd as lead counsel, and then a few days later figuratively pushed Dowd & Dowd out the courtroom door by saying that the firm's services weren't required and wouldn't be paid for during the trial, followed by Williams & Montgomery's abandonment of Dowd & Dowd's trial preparation and anticipated strategy. Then post-judgment Home actually barred Three I from any participation in efforts to settle the case. That sequence of ratcheting events and of Home's high-handedness are redolent of Ogden Nash's poem satirizing the Japanese invasion of Manchuria in the 1930s, *The Japanese in the Garden*.

Home argues that the *Peppers* test is inapplicable because in *Peppers* there was no reservation of rights. But for the reasons explained earlier, the presence or absence of a reservation of rights in the context here is really a red herring. Indeed, both *Willis Corroon*, 203 F.3d at 452 and *Brochu*, 105 Ill.2d at 499–500, 86 Ill. Dec. 493, 475 N.E.2d at 879, an Illinois Supreme Court decision involving a reservation of rights, relied upon the *Peppers* authority as applicable whenever the insurer chooses to defend its insured, without any indication that some different standard of prejudice is called for in the reservation of rights context.

There is no dispute that when Home entered the Cook County Action by taking over at the eleventh hour,[10] it replaced Three I's chosen defense attorneys with a new firm and that it refused to pay the attorneys' fees for Three I's original counsel even to appear at trial (T. St.¶¶ 22, 27). H.Mem. 9 seeks to counter:

> The Home did not "seize" control of the defense and Three I provides no proof that it did. While Carroll recognized that The Home had the right to take over the defense, prior to the conclusion of the trial, he never told Three I that The Home was exercising that right.

It is irrelevant whether Home *said* it was exercising its takeover rights—it simply moved in and did so. All parties were aware that the Policy gave Home the right to take over the defense, and its actions spoke far louder than any announcement could do.

Most critically, Home's chosen counsel then drastically changed the trial strategy that had been prepared by Three I's attorneys (T. St.¶¶ 24–33), leaving Three I wide open to the devastation that the jury wreaked on it.[11] Home's assumption and retention of absolute control were again reconfirmed by two post-judgment letters that its coverage counsel sent Three I during the pendency of the ensuing appeal, stating that any intervention by Three I into the settlement negotiations would be considered a breach of contract (*id.* ¶¶ 40, 45).

It should be emphasized that Home's inability to assert late notice as a defense to Policy coverage is a wholly self-inflicted wound. It was perfectly free, especially given the lateness of the day, to pursue the option identified by its claims analyst Carroll of telling Three I that Home disclaimed coverage so that Three I was on its own so far as any potential exposure beyond Connecticut's primary coverage was concerned. It was equally free to take over the defense (despite its lack of obligation to do so) and to designate Dowd & Dowd to remain as defense counsel. In either of those events (or even if Home had continued to involve Williams & Montgomery as co-defense counsel, as the firm was originally designated, to work with Dowd & Dowd on a mutually acceptable defense strategy), Three I would have been totally at risk both in terms of the Cook County Action's outcome and in terms of a possible total lack of coverage because of the late timing of its notice to Home.

Instead Home chose to assert total dominance over the underlying defense, and its designated counsel likewise exercised total dominance over how the defense was carried out or not carried out. Having done

---

**10.** That hoary metaphor seems inadequate here. What strikes this Court as more likely to be suitable is a reference to the doomsday clock that the Bulletin of Atomic Scientists has published, particularly during the days of the cold war with Russia, which would move the *minute* hand closer to or farther away from midnight as the prospects of nuclear war and global desolation waxed and waned.

**11.** Home cannot fall back on its contentions that the Williams & Montgomery strategy was somehow better than Dowd & Dowd's, or that Three I would have ended up as badly off as (or worse off than) the jury verdict left it had Dowd & Dowd's anticipated course of action been followed. What controls instead is the ironclad control that was imposed on Three I and that has rendered it impossible to test those contentions.

so, Home cannot in good conscience walk away from the consequences with which it has stuck Three I. That is precisely the stuff of which an equitable defense such as estoppel is molded.

It will not do to speculate that Three I might have resisted the takeover by insisting that its own counsel remain in control, pursuing the line of defense that its counsel had developed. Any such prospect would have posed a Hobson's choice, for the Policy (like all such policies) deprived the insured of all coverage if it refused to cooperate. There is simply no genuine issue of material fact to suggest that Three I was not induced to surrender control over its defense. In turn, that inducement triggers the holdings in *Peppers* and its progeny that Three I was prejudiced by Home's conduct as a matter of law. That being true, Home is estopped by its own conduct from asserting a late notice defense to Three I's coverage claims.

### Conclusion

Given the fact that Home's assumption of Three I's defense induced Three I to surrender its right to control its defense, Home is now estopped from raising a late notice defense to Three I's coverage claims. Because this Court finds for Three I on the estoppel issue, it need not and does not address whether Home's late notice defense was also waived. Three I is entitled to a judgment as a matter of law, and its motion for summary judgment is granted. Inasmuch as Home's Complaint has sought a declaratory judgment, this Court grants such a declaration—but one opposite from Home's prayer: It declares that Home is obligated to provide coverage, to the extent of the Policy, so far as is necessary to pay Three I's share of the liability in the now-settled Cook County Action.