AMERICAN FIRE & CASUALTY COMPANY, Appellant–Defendant,

and

Direction in Design, Inc.,[1] Jeld–Wen of Canada, Ltd., Wickes, Inc. d/b/a Wickes Lumber Co., David Raulie d/b/a Raulie Construction Co., Greg Lockhart d/b/a Greg Lockhart Masonry, and Allstate Insurance Co., Appellees–Defendants,

v.

Thomas ROLLER and Christine Roller, Appellees–Plaintiffs.

No. 29A05–0511–CV–681.

Court of Appeals of Indiana.

Feb. 8, 2007.

---

1. Defendants Jeld–Wen of Canada, Ltd., Wickes, Inc. d/b/a Wickes Lumber Company, David Raulie d/b/a Raulie Construction Company, Greg Lockhart d/b/a Greg Lockhart Masonry, and Allstate Insurance Company are not seeking relief on appeal and have not filed briefs as appellants or appellees. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

Richard K. Shoultz, Lewis Wagner, LLP, Indianapolis, IN, Attorney for Appellant.

Jon Laramore, Mark A. Voigtmann, Jane A. Dall, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Thomas and Christine Roller.

Arthur R. Baxter, Jr., Robert G. James, Baxter James & Rose, LLP, Indianapolis, IN, Attorneys for Direction In Design, Inc.

## OPINION

MATHIAS, Judge.

American Fire & Casualty Company ("American Fire") appeals from the Hamil-ton Superior Court's denial of partial summary judgment in a suit brought by Thomas and Christina Roller ("the Rollers") against Direction in Design, Inc. ("DDI"). American Fire raises a single issue: whether the trial court erred in denying it partial summary judgment on the issue of whether coverage for claims for repair and replacement of faulty workmanship existed under the commercial general liability ("CGL") policy it issued to DDI. Concluding that the trial court properly denied summary judgment, we affirm and remand for proceedings consistent with this opinion.

## Facts and Procedural History[2]

DDI is a general contractor in the business of designing and building custom homes. From October 7, 2000 to October 7, 2002, American Fire provided liability insurance coverage to DDI under CGL policy number BKA (01) 52 51 39 87 ("the Policy"). In 1999, the Rollers contracted with DDI to design and build a house in Carmel for a quoted price of $1,153,575. DDI supervised or performed all of the construction work on the house. Shortly after moving into their new home in October 2000, the Rollers noticed a bathroom dormer window leaking and water running down the drywall. The Rollers continued to experience water intrusion in multiple rooms of their home and notified DDI of the leaks.

Initially, the leaks were treated as "punch list" items, and DDI sent a subcontractor to the home to caulk around the windows. However, DDI's efforts to remedy the problem were unsuccessful. Later, the Rollers discovered that the home had developed a mold problem. The Rollers eventually sought the opinion of a home inspection firm, which concluded that the water intrusion was caused by defec-

---

2. We heard oral argument in Indianapolis on October 18, 2006.

tive windows and doors, a subcontractor's failure to install flashings below the windows and a weather-resistant barrier behind the brick veneer, and other problems with the home's masonry.

By March of 2002, DDI had notified American Fire of the problems with the Rollers' home. On March 28, 2002, American Fire sent DDI a reservation of rights letter, advising that it would not indemnify DDI on the Rollers' damages. On December 17, 2002, the Rollers filed a complaint against DDI in Hamilton Superior Court, alleging that DDI's faulty workmanship in constructing their home caused extensive property damage. DDI denied the Rollers' allegations and filed a third-party complaint against two suppliers and two subcontractors involved in the home's construction. In addition, DDI requested insurance coverage, including a defense and indemnity, from American Fire under the Policy.

American Fire issued a second reservation of rights letter on January 21, 2003, asserting that DDI had failed to timely notify it of the Rollers' claims. American Fire provided DDI with defense counsel, and attorney Kevin C. Tyra ("Attorney Tyra") entered an appearance on DDI's behalf on January 31, 2003. Then, in February 2003, American Fire filed a declaratory judgment action in federal district court, contending that the Policy did not create a duty for it to defend or indemnify DDI on the Rollers' complaint.

On August 25, 2003, the Rollers amended their complaint in state court, adding American Fire as a defendant and requesting a declaratory judgment of coverage. American Fire moved to dismiss the state court action against it, arguing among other things that combining the coverage and declaratory actions would present Attorney Tyra "with an untenable conflict of interest." Appellant's App. p. 238. The trial court denied the motion. On December 29, 2003, on the Rollers' motion, the federal district court entered an order of abstention and dismissed American Fire's declaratory judgment action.

On September 13, 2004, American Fire moved for summary judgment on the declaratory judgment action in state court. In its motion, American Fire asserted three grounds entitling it to summary judgment. First, American Fire claimed that it owed no coverage to DDI because of DDI's failure to timely notify it of the events leading to the Rollers' lawsuit. In the alternative, American Fire requested partial summary judgment on the basis that it owed no indemnity coverage for economic losses arising out of DDI's faulty workmanship. Finally, American Fire also requested partial summary judgment on the issue of whether it owed liability coverage for any claims resulting from a deck collapse that occurred on May 6, 2003.

In turn, DDI and the Rollers each filed a response and cross-motion for summary judgment. In their motions, DDI and the Rollers both argued that American Fire's bad faith actions in investigating the Rollers' claims and defending DDI should estop it from asserting a coverage defense. Specifically, the Appellees contended that American Fire delayed in notifying DDI of the coverage issue, that it failed to notify potentially liable subcontractors, that it "conducted its purported defense of [DDI] on the cheap, postponing needed but expensive steps in the defense," that it refused to hire a construction expert, and that it provided an inadequate defense by employing an attorney operating under "a crushing conflict of interest." Appellant's App. pp. 805, 1026.

On July 7, 2005, the trial court issued an order denying American Fire summary judgment on the issue of liability insurance coverage to DDI. In doing so, the trial

court expressly found that "there is a question of fact as to whether American Fire received late notice of any potential claims presented by the Rollers and whether American Fire was prejudiced as a result of that late notice." Appellant's App. p. 20. The trial court then granted summary judgment to American Fire on the issue of liability coverage for claims arising from the deck collapse, finding that the collapse occurred after the Policy lapsed.

On the same date and by way of two separate orders, the trial court denied both DDI's and the Rollers' cross-motions for summary judgment. American Fire requested that the trial court certify its order denying it partial summary judgment for interlocutory appeal under Indiana Appellate Rule 14(B). Over objections from both the Rollers and DDI, the trial court certified the order. Thereafter, this court accepted jurisdiction.

American Fire now appeals the trial court's denial of summary judgment on the issue of whether it owed liability insurance coverage under the Policy to DDI on the Rollers' claims.

### Standard of Review

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind.2005) (citations omitted).

### I. Coverage Under the Policy

■ American Fire argues that the Policy provides coverage only for "bodily injury" or "property damage" caused by an "occurrence." The Policy provides, in relevant part: "[t]his insurance applies to 'bodily injury' or 'property damage' only if: 1. The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]" Appellant's App. p. 288. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 300. In addition, the Policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 301.

American Fire contends that because there is evidence of neither an "occurrence" nor of "property damage," it owes no liability coverage to DDI for the Rollers' claims for the cost to repair and replace DDI's alleged faulty workmanship.

In support of this argument, American Fire directs us to several Indiana cases addressing whether repair of faulty workmanship was covered as an "occurrence" of "property damage" under a CGL policy. In particular, in *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Insurance Co.*, 686 N.E.2d 160 (Ind.Ct.App.1997), *trans. denied,* this court addressed the

breadth of coverage of CGL policies generally, noting:

> CGL policies cover the possibility that the goods, products, or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than* to the product or completed work itself, and for which injury or damage the insured might be exposed to liability. The coverage is for tort liability for physical damages to others, and not for contractual liability of the insured for economic loss suffered because the completed work is not what the damaged person bargained for.

686 N.E.2d at 162 (emphasis in original) (citations omitted).

While urging us on appeal to reverse the trial court's denial of summary judgment, American Fire nevertheless "concedes that the Rollers allege that they have sustained some resultant damage from [DDI's] faulty workmanship[.]" Reply Br. at 3. Indeed, American Fire also acknowledges that it does "have a duty to indemnify for damages that resulted from [DDI's] defective work or materials such as the Rollers['] carpeting which was not part of [DDI's] construction work, but was allegedly damaged because of [DDI's] work[.]" Reply Br. at 7.

Thus, American Fire requests a reversal for what appears to be a clear issue of law. However, as the trial court specifically noted in its order, genuine issues of material fact remain on the issue of coverage, namely whether DDI provided American Fire with timely notice of potential claims. Therefore, we conclude that the trial court properly denied summary judgment to American Fire.

## II. Estoppel

■ Finally, in an effort to establish liability coverage for all, rather than just a portion of the Rollers' damages, both DDI and the Rollers urge us to reverse the trial court's denial of summary judgment to them and conclude as a matter of law that American Fire's bad faith in investigating the Rollers' claims and in defending DDI should estop it from denying coverage.

■ In the context of insurance, estoppel refers to an insurance company's preclusion from asserting its rights under a policy or an abatement of those rights and privileges where it would be inequitable to permit the assertion of rights. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind.Ct.App.1999), *trans. denied* (quoting 46 C.J.S. *Insurance* § 786 (1993)). As a general rule under Indiana law, the doctrine of estoppel cannot create or extend the scope of coverage of an insurance contract. *Id.*; *Transcon. Ins. Co. v. Manta*, 714 N.E.2d 1277, 1281 (Ind.Ct.App.1999). This rule protects an insurance company from being required to pay out on a loss it has not contracted to accept risk for. *See Manta*, 714 N.E.2d at 1281.

■ However, this court has recognized two exceptions to the general rule. *Id.* First, an insurer may be estopped from denying coverage when the insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage that in fact does not cover the disputed risk. *Id.*; *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 992 (1977).

■ Under the second exception, an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without a reservation of rights but with knowledge of facts that would have permitted it to deny coverage. *Recticel Foam*, 716 N.E.2d at 1028; *Manta*, 714 N.E.2d at 1282; *Hermitage Ins. Co. v.*

*Salts,* 698 N.E.2d 856, 859 (Ind.Ct.App. 1998).

> This exception is predicated upon the insurer's conflict of interest, that is, at the same time the insurer defends the insured, it may also be formulating policy defenses to deny coverage. It is also justified by the fact that the insured is deprived of his right to control his defense.

*Recticel Foam,* 716 N.E.2d at 1028 (citations and footnotes omitted). Whether an insurer is estopped to disclaim liability under an insurance policy is generally a question for the fact-finder. *Id.*

Here, American Fire neither refused to defend DDI nor defended without a reservation of rights; thus, neither exception applies. However, DDI and the Rollers contend that American Fire's bad faith conduct warrants the recognition of a third exception. Specifically, they argue that estoppel is the only adequate and appropriate remedy when an insurer defending under a reservation of rights breaches its good faith obligation to its insured.

 "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind.1993). Thus, when an insurer undertakes to defend its insured under a reservation of rights, it must proceed in good faith. See *Recticel Foam,* 716 N.E.2d at 1029 (citing *Tank v. State Farm Fire & Cas. Co.,* 105 Wash.2d 381, 715 P.2d 1133, 1137 (1986)). "A reservation of rights agreement is not a license for an insurer to conduct the defense of an action in a manner other than the manner in which it would normally be required to defend. The basic obligations of the insurer to the insured remain in effect." *Tank,* 715 P.2d at 1137.

The Appellees argue that we should recognize a third exception to the general rule against estoppel creating coverage. In doing so, they direct us to cases from other jurisdictions which have concluded that an insurer's bad faith actions may estop denial of coverage. *See e.g. Willis Corroon Corp. v. Home Ins. Co.,* 203 F.3d 449 (7th Cir.2000) (applying Illinois law); *Enoka v. AIG Hawaii Ins. Co.,* 109 Hawai'i 537, 128 P.3d 850 (2006); *Lloyd's & Inst. of London Underwriting Cos. v. Fulton,* 2 P.3d 1199 (Alaska 2000); *Safeco Ins. Co. of Am. v. Butler,* 118 Wash.2d 383, 823 P.2d 499 (1992).

However, these cases note, as this court did in *Recticel Foam,* that "[w]hether an insurer is estopped to disclaim liability under the insurance policy is generally a question for the fact-finder unless the facts giving rise to the estoppel are undisputed and susceptible of only one interpretation." 716 N.E.2d at 1028 (citations omitted).

While the Appellees allege certain facts that may well support an estoppel of a noncoverage defense, we cannot conclude that the facts before us are susceptible of only one interpretation. Therefore, we affirm the trial court's denial of summary judgment to DDI and the Rollers on the basis of estoppel.

### Conclusion

Genuine issues of material fact remain as to coverage under the Policy. Therefore, we affirm the trial court's denial of summary judgment and remand with instructions to try the contractual coverage issues, and if necessary, to determine whether American Fire should be estopped from denying coverage under the Policy.

Affirmed and remanded for proceedings consistent with this opinion.

NAJAM, J., concurs.

BARNES, J., concurs with separate opinion.

BARNES, Judge, concurring.

I concur in affirming the denial of American Fire's motion for partial summary judgment under part I of the majority opinion. Under part II, I believe it is more accurate to say that we also are affirming the denial of American Fire's partial summary judgment motion because of possible bad faith, not that we are affirming the denial of the Rollers' and DDI's cross-motions for summary judgment. Because of the procedural posture of this case, we are not permitted to rule on the propriety of denying the Rollers' and DDI's cross-motions for summary judgment. That is, the trial court certified the denial of American Fire's summary judgment for interlocutory appeal and we accepted appellate jurisdiction on that basis, over the Rollers' and DDI's objection. The denial of *their* summary judgment motions was not certified or accepted for interlocutory appeal and, therefore, cannot be ruled on in this appeal. *See Coca–Cola Co. v. Babyback's Int'l, Inc.,* 841 N.E.2d 557, 561 (Ind.2006). Additionally, in their opening briefs the Rollers and DDI did not ask that we reverse the denial of their summary judgment motions; they only asked for affirmance of the denial of American Fire's summary judgment motion and remand for further proceedings on the bad faith issue.

I write separately to discuss in more detail why I believe American Fire might be estopped from denying coverage because of its alleged bad faith handling of DDI's defense. First, I believe this court has already implicitly, and correctly, recognized that an insurance company can be estopped from denying coverage if it represents to its insured that it will defend a claim under a reservation of rights, but then proceeds to handle that defense in bad faith. We have stated when an insurance company undertakes to defend an insured under a reservation of rights, the insurer is not immunized from responsibility for all of its actions. *Employers Ins. of Wausau v. Recticel Foam Corp.,* 716 N.E.2d 1015, 1029 (Ind.Ct.App.1999), *trans. denied.* Our supreme court not only has recognized the legal duty implied in all insurance contracts that the insurer deal in good faith with its insured, but also has provided for a cause of action if that duty is breached. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 519 (Ind. 1993). It makes sense to me that if an insured can bring an independent tort action against an insurer based on bad faith, the insured should also be able to estop the insurer from denying coverage, by establishing bad faith during the course of a declaratory judgment action seeking to clarify the insurer's coverage responsibilities.

I believe that the Washington Supreme Court has set forth comprehensive guidelines that Indiana courts should adopt and follow when evaluating whether an insurer has discharged its duty to defend its insured in good faith under a reservation of rights. As that court has stated, "an insurer owes the same duty of good faith to its insured, regardless of the type of defense it has undertaken." *Tank v. State Farm Fire & Cas. Co.,* 105 Wash.2d 381, 715 P.2d 1133, 1137 (1986). It has gone even further and held, "the potential conflicts of interest between insurer and insured inherent in [a reservation of rights] defense mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in lia-

bility of the company, or retained defense counsel, or both." *Id.*

The *Tank* court continued:

This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of his lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action that would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*Id.* With specific respect to defense counsel retained by insurers to defend insureds under a reservation of rights, counsel must understand that he or she represents only the insured, not the company. *Id.* Additionally, retained counsel owes a duty of full and ongoing disclosure to the insured, which includes disclosure of all potential conflicts of interest between the insurer and insured and resolution of any potential conflicts in favor of the insured. *Id.*

Using the *Tank* formulation of the duty to defend under a reservation of rights, the summary judgment record raises a material issue of fact regarding whether American Fire violated its obligation to fully investigate the claim against DDI. There is evidence that as early as June 2002, an American Fire claims adjustor and his supervisor both agreed that a construction expert was needed to evaluate the claim against DDI. However, no expert was ever hired, and the Rollers took steps in April 2003 to remediate the alleged damage caused by DDI and/or its subcontractors, thus making any subsequent expert evaluation of the home worthless or impossible. Viewing this evidence in a light most favorable to DDI and the Rollers, it is descriptive of a bad faith failure on American Fire's part to evaluate a claim against its insured.

Even more troubling in this case, though, is American Fire's hiring of attorney Kevin Tyra to defend DDI. Although Tyra was not an employee of American Fire, there was evidence presented that his firm derived approximately fifty percent of its income from American Fire referrals. From the beginning, this should have raised a red alert in a case where American Fire undertook to defend DDI under a reservation of rights. An insurer who questions whether it is required to cover a claim against its insured essentially has two options: "(1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire *independent* counsel and defend its insured under a reservation of rights." *Gallant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223, 1227 (Ind.Ct.App.1999) (emphasis added). It is clear to me that Tyra did not meet the definition of "independent" counsel.

Our supreme court has held that in the ordinary case, it is acceptable for in-house insurance company lawyers to defend insureds in litigation. *Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 153 (Ind.1999). Wills, however, did not concern defending an insured under a reservation of rights, and the court was careful to state that "attorneys who are employees of insurance companies do not *necessarily* trigger an impermissible conflict in violation of the

Rules of Professional Conduct when they appear as counsel to defend claims against the companies' policyholders." Id. at 155 (emphasis added). The court further stated:

It is of course true that conflicts may arise in the course of representation of an insured by house counsel. The same is true if the insurer pays for a law firm to represent its insured. In either case there may be a conflict based on coverage disputes, the risk of a claim in excess of policy limits, the acquisition of information from the insured that bears on coverage, or a variety of other items. If such a situation arises retention of new counsel to represent the policyholder may be either preferred or necessary. But this potential does not require the abandonment of a mode of doing business that the insurer finds efficient and cost effective, and the insured knowingly accepts. . . .

Finally, as already noted, apart from the unauthorized practice issue, most of the problems identified by the Wills exist whether house counsel or outside counsel are used. If there is any difference between house and outside lawyers in this respect it is quantitative and not qualitative and varies from situation to situation. Employee-attorneys may be subject to pressures from their employer. But it is also unrealistic to suggest that an outside lawyer is immune from the blandishments of a client, particularly a high volume client that may be the source of a significant portion of the firm's revenues.

*Wills*, 717 N.E.2d at 162–63.

Here, there is no indication in the record that DDI was aware that Tyra essentially was "captive" counsel of American Fire when it accepted American Fire's defense under a reservation of rights. American Fire knew it was involved in a coverage dispute with DDI when it hired Tyra to represent DDI, and the fact that Tyra's firm thrived on referrals from American Fire leaves one to seriously doubt whether Tyra ever could have effectively represented DDI's interests and completely ignored his and his firm's dependence on American Fire's business. Additionally, Indiana Professional Conduct Rule 1.7(a)(2) states that an impermissible concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer," unless each affected client gives written, informed consent to the representation. Arguably, Tyra's representation of DDI while American Fire was providing a defense under a reservation of rights violated this rule.

More than this, however, there is evidence in the record that Tyra actually expressed to American Fire (but not DDI) that he had a severe conflict of interest, but he continued representing DDI for several months thereafter. In communications with American Fire, Tyra raised the possibility that it had not properly or timely investigated the claim against DDI but, despite his nominal representation of DDI at the time, stated that it "turns my stomach" to consider pursuing any claim against American Fire related to a delayed investigation, and "even the suggestion that I would pursue interests contrary to [American Fire's] is anathema." App. p. 994. Tyra remained DDI's counsel for four months after this communication, during which time he defended DDI's principal in a deposition. Tyra also admitted to doing nothing during this time to advance DDI's coverage case against American Fire, despite being aware of a basis for doing so.

DDI had the right to expect that American Fire's tender of a defense came with no strings attached and that any attorney hired by American Fire would not be conflicted. The summary judgment evidence indicates that that did not happen here. In my view the trial court undoubtedly was correct in denying American Fire's motion for summary judgment. There should be further proceedings below to definitively resolve DDI's and the Rollers' claims of bad faith on American Fire's part, which generally is a question of fact to be resolved by a fact-finder. *See Recticel Foam,* 716 N.E.2d at 1028. If bad faith is established during trial, American Fire should be estopped from denying coverage to DDI.