2023 IL App (1st) 221938-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
August 8, 2023

No. 1-22-1938

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

|  |  |  |
|---|---|---|
|  | ) | Appeal from the |
|  | ) | Circuit Court of |
| *In re* ESTATE OF FRED WILCOX, an Eligible Adult | ) | Cook County |
|  | ) |  |
| (Solutions for Care, Petitioner-Appellee v. Vickie Rockel and Jeff Rockel, Respondents-Appellants). | ) | No. 22 P 4016 |
|  | ) |  |
|  | ) | The Honorable |
|  | ) | Jesse Outlaw, |
|  | ) | Judge Presiding. |

---

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held:*   As petitioner's actions did not amount to voluntary dismissal, respondents were not entitled to hearing on potentially dispositive motion or award of costs. Trial court did not abuse its discretion by denying motion for pleading sanctions or quashing postjudgment notice of deposition issued in connection with that motion.

¶ 2   The petitioner, Solutions for Care, is a nonprofit provider agency appointed by the Illinois Department on Aging to receive and investigate reports of, among other matters, the alleged or suspected financial exploitation of certain elderly adults under the Adult Protective Services Act (Act) (320 ILCS 20/1 *et seq.* (West 2022)). It filed this action, in which it sought from the trial court an emergency *ex parte* order authorizing it to conduct an assessment concerning a report that

it had received of the suspected financial exploitation of Fred Wilcox. See *id.* § 9(d). It named as respondents Wilcox's daughter and son-in-law, respondents Vickie Rockel and Jeff Rockel. The trial court entered the *ex parte* order sought. After that order expired and the petitioner's counsel informed the trial court that the petitioner was seeking no further relief, the trial court dismissed the action, ruled that the respondents' motion to strike and dismiss the original motion for the *ex parte* order was rendered moot, and declined to consider it. The respondents appeal the trial court's refusal to hear their motion, as well as its denial of their motion that the petitioner reimburse their costs. They also appeal the trial court's denial of their motion for sanctions against the petitioner, along with its quashing of a notice of deposition issued to an employee of the petitioner in connection with that motion. We affirm.

¶ 3                                   BACKGROUND

¶ 4        This case originated on May 24, 2022, when the petitioner filed a pleading styled as an emergency motion for an *ex parte* order allowing access and assessment under section 9(d) of the Act. *Id.* That motion, which was verified by Austin Selee, an adult protection services caseworker for the petitioner, alleged that the petitioner had received a report that 87-year-old Fred Wilcox was being financially exploited by the respondents. It alleged that the petitioner had confirmed with Wilcox's bank that over $100,000 had been withdrawn from his accounts. It asserted that the petitioner had requested financial documentation as to why that money had been withdrawn, but the respondents had not complied and had hired an attorney to stop the investigation without providing the documentation requested. It alleged that the petitioner had been unable to see or communicate with Wilcox in the preceding month and that the respondents had canceled two doctor's appointments for him. It alleged that both Wilcox and the petitioner would suffer irreparable injury unless the respondents were enjoined on an emergency basis, before notice could

be served or hearing held, from interfering with the petitioner's access to Wilcox to fulfill its statutory mandate to protect elderly adults from financial exploitation.

¶ 5    The motion sought relief in the nature of an order restraining the respondents from denying the petitioner access to Wilcox, including the ability to meet and communicate with him alone. It sought to restrain the respondents from using or withdrawing funds belonging to Wilcox for the benefit of anyone other than him. And it sought the court's authorization for the petitioner (with the assistance of the necessary professionals, including law enforcement personnel, medical personnel, and representatives of the Cook County Public Guardian) to arrange for Wilcox to be examined and assessed for services, decisional capacity, and the possible need for a guardian.

¶ 6    On June 6, 2022, the trial court entered an order granting the emergency motion for an *ex parte* order, thereby granting all relief requested by the petitioner in its motion. By statute, this order expired 15 days after its entry unless the petitioner sought the appointment of a guardian. See *id.* § 9(e). On June 13, 2022, an appearance was filed on behalf of the respondents, along with a motion to vacate or dissolve the order of June 6. On June 17, 2022, the respondents also filed a motion to strike and dismiss the emergency motion for the *ex parte* order. That motion to strike and dismiss alleged that the petitioner's motion did not allege an "emergency," as that term is defined in the Act (see *id.* § 2(f)), and therefore it was fatally defective. It also alleged that the petitioner's motion failed to satisfy various local rules of the circuit court concerning emergency motions and that it failed to present a judiciable matter as required by the Illinois constitution.

¶ 7    A briefing schedule was entered on the two motions filed by the respondents, and the trial court set the matter for status on July 26, 2022. On that date, the petitioner's counsel stated to the trial court that the petitioner was not intending to petition for guardianship on behalf of Wilcox, and thus the matter was concluded. The respondents' counsel responded that this action constituted

a voluntary dismissal under section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 2022)), and thus the trial court should decide the respondents' dispositive motion to strike and dismiss before allowing a nonsuit. The petitioner's counsel replied that it was not taking a voluntary dismissal, but rather all relief that it had requested in the pleadings had been obtained. The trial court declined to consider the respondent's dispositive motion. It entered an order stating that the matter was "dismissed" based upon the petitioner's attorney's statement that the petitioner "no longer wish[ed] to proceed any further" and that the respondent's two motions were rendered moot based on the dismissal of the underlying motion. On a later date, the court denied a motion by the respondents to recover costs from petitioner based on the purported voluntary dismissal.

¶ 8    On August 12, 2022, the respondents filed a motion for sanctions against the petitioner and its attorney under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), alleging that they had lacked a good faith basis in fact or law for filing the emergency motion for the *ex parte* order. The motion alleged that the petitioner's agents or employees had interviewed Wilcox and his wife on March 7, 2022, and had caused their bank accounts to be frozen without any credible evidence of financial exploitation. It asserted that the allegation in the emergency motion that Wilcox had not been seen or communicated with in a month or more was patently false, which any reasonable investigation would have revealed. It asserted that the petitioner was aware that respondent Vickie Rockel held power of attorney to act on Wilcox's behalf. And it asserted that as of March 29, 2022, the petitioner should have recognized that no factual or legal basis existed to proceed further with an investigation of any possible financial exploitation of Wilcox. It cited an attached e-mail from the respondents' counsel to the petitioner's counsel dated March 29, referencing the respondents' counsel's discussion with a third attorney who was present when the petitioner's employees interviewed Wilcox. According to that e-mail, that third attorney had informed the respondents'

counsel that Wilcox remembered writing the checks at issue, knew where he lived, and responded positively to questions testing his cognitive ability.

¶ 9     The petitioner filed a combined response brief and motion to dismiss the motion for sanctions. In summary, it asserted that the respondents' motion had failed to address the fact that, prior to filing the emergency motion for the *ex parte* order, the petitioner had spent three months unsuccessfully attempting to obtain information and cooperation from the respondents concerning the withdrawals from Wilcox's bank accounts, which exceeded $100,000 and lacked any clear explanation. It pointed out that the checks were written in handwriting that did not appear to be Wilcox's and did not include any indication that they had been signed on his behalf by someone acting as power of attorney. It alleged that, based on the respondents' refusal to cooperate, it had an obligation to take action to protect Wilcox's interests and that the emergency motion was a reasonable and necessary effort to do so.

¶ 10     In connection with their motion for sanctions, the respondents also served a notice of deposition upon the petitioner to take the discovery deposition of Selee, the caseworker involved in the investigation at issue. When the petitioner refused to produce Selee for deposition, the respondents filed a petition for rule to show cause and for a finding of indirect civil contempt. Thereafter, the petitioner filed a separate motion to quash the notice of deposition. In summary, the motion to quash argued that information regarding an investigation into elder abuse by an agency such as the petitioner is confidential under multiple statutes. It further argued that a deposition of Selee was not necessary for adjudication of the motion for sanctions and was simply an attempt at retaliation and harassment against the petitioner for conducting an investigation.

¶ 11     On December 2, 2022, the trial court granted the motion to quash the notice of deposition issued for Selee and denied the motion for sanctions. In doing so, the court expressed various

concerns regarding the confidential nature of the information on which an investigation into abuse or exploitation is based, and it noted that the case was filed to obtain information in furtherance of the petitioner's statutory duty to investigate reports of elder abuse. The respondents filed a timely notice of appeal.

¶ 12                                                           ANALYSIS

¶ 13        The respondents raise four arguments on appeal. First, they argue that the trial court abused its discretion when it failed to hear their motion to strike and dismiss before allowing a voluntary dismissal of the case. Second, they argue that it erred in failing to award them costs in connection with the petitioners' oral motion to voluntarily dismiss. Third, they argue that the trial court erred when it quashed the notice of deposition issued for Selee. Finally, they argue that the trial court erred when it denied their motion for sanctions. We find no merit to any of these arguments.

¶ 14        Initially, though, we reject the petitioner's contention that each of the above arguments was forfeited due to the respondents' failure file a posttrial brief. The case cited by the petitioner, *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486 (1985), does not support the proposition that a posttrial motion is necessary in this context to preserve appellate review of an issue. Rather, *Brochu* makes the more general point that questions not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. *Id.* at 500. Here, we conclude that all issues raised on appeal were sufficiently presented to the trial court to enable review.

¶ 15        We will address together the respondents' first two arguments, as both are premised on the notion that a voluntary dismissal of this case occurred on July 26, 2022, when the petitioner's counsel informed the trial court that the petitioner was not proceeding any further with the case. The right of a plaintiff or petitioner to voluntarily dismiss an action is governed by section 2-1009 of the Code of Civil Procedure. 735 ILCS 5/2-1009 (West 2022). That statute allows a plaintiff, at

any time before trial or hearing begins, upon notice to each party who has appeared or such party's attorney, *and upon payment of costs*, to dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause. *Id.* § 2-1009(a). However, where a prior defense motion is on file that could result in a final disposition of the cause if favorably ruled upon by the court, the court may hear and decide that potentially dispositive motion before allowing the voluntary dismissal. *Id.* § 2-1009(b).

¶ 16    For its part, the petitioner contends that what occurred on July 26 was not a voluntary dismissal. Rather, the petitioner asserts that it had obtained all the relief sought in its emergency motion on June 6, 2022, when the trial court granted that motion in its entirety and entered the *ex parte* order authorizing the petitioner to access Wilcox and perform an assessment of him. It states that it obtained a medical assessment of Wilcox to assess the need for guardianship, and once that was completed it sought no further relief. Accordingly, it contends that there was nothing to voluntarily dismiss by July 26, and rather its counsel was simply informing the court that no additional relief was being pursued in the case. The trial court's statement in its written order that the case was "dismissed" simply means that the case was concluded. Thus, the petitioner contends, there was no basis for the trial court to hear the respondents' motion to dismiss or strike, which was then moot, and there was no basis for an order that the petitioner pay the respondents' costs.

¶ 17    We agree with the petitioner that its attorney's representations to the trial court on July 26 did not constitute a voluntary dismissal of the case. In filing this case, the petitioner was acting pursuant to the duties imposed on it under the Act to receive reports of alleged or suspected elder abuse, including financial exploitation, to conduct face-to-face assessments of such reported cases, to determine the substantiation of such reports, and to make appropriate referrals on substantiated cases. See 320 ILCS 20/3(c), 5(a) (West 2022). The procedure employed by the petitioner of

seeking an *ex parte* order authorizing assessment and access was one specifically contemplated under the Act. Section 9(d) provides that if an emergency exists and the provider agency reasonably believes that a person is an eligible adult and lacks the capacity to consent to necessary services, it may request an *ex parte* order from the circuit court authorizing an assessment of a report of alleged or suspected financial exploitation, the provision of necessary services, or both. *Id.* § 9(d). Petitions filed under section 9(d) are treated as expedited proceedings. *Id.* Section 9(e) provides that such orders are limited in duration:

> "(e) Within 15 days after the entry of the *ex parte* emergency order, the order shall expire, or, if the need for assessment of the reported incident or services continues, the provider agency shall petition for the appointment of a guardian as provided in Article XIa of the Probate Act of 1975 for the purpose of consenting to such assessment or services or to protect the eligible adult from further harm." *Id.* § 9(e).

Also, section 13(b)(1) of the Act contemplates that a provider agency may petition the court for an order to require appropriate access where a caregiver or third party has interfered with assessment. *Id.* § 13(b)(1). Section 13(d) of the Act authorizes a provider agency to petition for an order freezing the assets of the eligible adult. *Id.* § 13(d).

¶ 18    Here, the relief requested in the petitioner's emergency motion for an *ex parte* order included (1) restraining the respondents from blocking the petitioner's access to or ability to communicate alone with Wilcox; (2) restraining the respondents from using or withdrawing funds belonging to Wilcox for the benefit of anyone other than him; and (3) authorizing the petitioner (with the assistance of the necessary professionals, including law enforcement personnel, medical personnel, and representatives of the Cook County Public Guardian) to arrange for Wilcox to be examined and assessed for services, decisional capacity, and the possible need for a guardian. The

trial court granted the entirety of the relief sought by its order of June 6, 2022. However, this order expired 15 days later, on June 21, 2022. According to the petitioner's counsel's statements at the hearing on July 26, 2022, a medical evaluation was completed while the order was in effect. Thus, when the petitioner's counsel informed the trial court that the petitioner did not intend to petition for the appointment for a guardian, the trial court properly recognized that this concluded the case. It was not thereby allowing the entry of a voluntary dismissal.

¶ 19    As its order did not involve a voluntary dismissal, the statutory provision authorizing a trial court to hear a potentially dispositive motion before allowing voluntary dismissal was inapplicable. See 735 ILCS 5/2-1009(b) (West 2022). Likewise, the provision concerning the payment of costs as a condition of voluntary dismissal was also inapplicable. *Id.* § 2-1009(a). Accordingly, the trial court did not err in finding that the respondents' motion to strike and dismiss was moot and declining to hear it, or by denying the respondents' request for an award of costs.

¶ 20    We next consider together the respondents' third and fourth arguments on appeal, which are that the trial court abused its discretion when it denied their motion for sanctions and quashed the notice of Selee's deposition issued in conjunction with that motion. The respondents' motion sought to impose sanctions under Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018), which authorizes a trial court to impose sanctions against attorneys or parties who sign and file frivolous pleadings, motions, or other documents that lack a basis in law or fact. The signature of an attorney or party on such document constitutes a certification "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* The determination of whether

to impose sanctions under Rule 137 rests within the sound discretion of the trial court; its decision to impose or deny sanctions is entitled to great weight on appeal and will not be disturbed absent abuse of discretion. *Benson v. Stafford*, 407 Ill. App. 3d 902, 928-29 (2010). A trial court also has the discretion to determine that an evidentiary hearing is unnecessary for it to deny a motion for sanctions. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154-55 (1993); accord *Reverse Mortgage Solutions, Inc. v. Rahman*, 2017 IL App (1st) 161035, ¶ 33.

¶ 21 The trial court's overall comments at the hearing on these two motions make clear that its rulings were based on two concerns. The first involved the confidential nature of the information surrounding the investigation at issue, which would be part of the subject matter of a deposition of Selee. The second was that the petitioner had a duty under statute to conduct investigations into reports of alleged financial exploitation of elderly individuals, which is what this case involved, and it should not be forced to pay the respondents a result of its efforts to fulfill that duty.

¶ 22 The respondents argue on appeal that, although some information surrounding an investigation under the Act is indeed confidential, not everything pertaining to the investigative process or the case file about which Selee could be deposed is confidential. They argue that, by virtue of their filing a motion for sanctions, it became relevant "what if any investigation was made to ascertain the truth of the allegations" that the petitioner made when it filed its "emergency" motion two months after interviewing Wilcox. They argue that the trial court acted prematurely by denying their motion for sanctions without permitting discovery, which is broadly allowed under Illinois law, or conducting an evidentiary hearing. They argue that the mere fact that the petitioner is "tasked with doing good things" does not mean that it is immune from sanctions.

¶ 23 We hold that the trial court did not abuse its discretion in granting the motion to quash Selee's deposition or in denying the motion for sanctions. As to the motion to quash, we note the

significant fact that it involved an attempt to take a deposition after the underlying case had concluded. In contrast to the pretrial setting, in which discovery is broadly allowed into any relevant matter, discovery following the conclusion of an underlying case is rare and limited within the trial court's sound discretion. See *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 395-98 (2002).[1] While a trial court has the discretion to permit discovery in the context of a postjudgment motion for pleading sanctions, the extent to which such discovery is allowed is a matter squarely within the trial court's discretion. *Hursey v. Calhoun*, 2020 IL App (5th) 190276, ¶¶ 60-61.

¶ 24    The trial court was justified in its concern that a deposition of Selee concerning the nature and extent of his investigation into the report of the suspected financial exploitation of Wilcox would inevitably involve inquiry into matters touching upon information made confidential under the Act. Section 8 of the Act provides that "[a]ll records concerning reports of *** financial exploitation *** and all records generated as a result of such reports shall be confidential and shall not be disclosed except as specifically authorized by this Act or other applicable law." 320 ILCS 20/8 (West 2022). It goes on to state that access to such records shall be provided, in cases regarding financial exploitation, to "a court or a guardian *ad litem*, upon its or his or her finding that access to such records may be necessary for the determination of an issue before the court." *Id.* § 8(5). "However, such access shall be limited to an *in camera* inspection of the records, unless the court determines that disclosure of the information contained therein is necessary for the

---

[1] We note that the availability of discovery relating to a motion for pleading sanctions is a topic that is addressed expressly in the advisory committee notes to Federal Rule of Civil Procedure 11 (eff. Dec. 1, 2007), which is the federal counterpart to Illinois Supreme Court Rule 137. There it is stated that discovery should be conducted "only in extraordinary circumstances." Fed. R. Civ. P. 11, Advisory Committee Notes (1983 amendment). Due to the similarities between Rule 137 and Rule 11, Illinois courts have sought guidance from the federal courts' interpretation of Rule 11. *People v. Stefanski*, 377 Ill. App. 3d 548, 551 (2007). And the weight of federal authority states that discovery on motions for pleading sanctions is allowed only in extraordinary circumstances. See *Vasudevan Software, Inc. v. International Business Machines Corp.*, No. C09-05897, 2011 WL 940263, *5 (N.D. Cal. Feb. 18, 2011) (collecting cases). The federal approach appears to be consistent with the practice of Illinois trial courts on this matter.

resolution of an issue then pending before it." *Id.* The respondents' arguments that their attorney would limit questioning of Selee to nonconfidential matters is unavailing. The crux of what the respondents want to question him about is the extent of the investigation that the petitioner conducted into the report before filing its motion and labeling it as an emergency. We agree that such inquiry would inevitably touch upon facts deemed confidential under the Act, and it was reasonable for the trial court to decline to allow this kind of issue to be injected into a case that had already concluded.

¶ 25    Further, although the trial court's statements are not explicit on this point, it is clear from the trial court's overall comments and the tenor of the hearing that the trial court found little merit to the underlying argument that the petitioner's filing of its emergency motion was sanctionable conduct. This sentiment formed the basis of both the granting of the motion to quash and the denial of the motion for sanctions. In granting the motion to quash, the trial court discussed the fact that the petitioner had a duty when it received a report of suspected elder abuse to conduct an investigation and could not just ignore the report. The emergency motion at issue was simply part of an inquiry to obtain the information it needed to complete its investigation and fulfill its duty. Likewise, the trial court's denial of the motion for sanctions occurred immediately after it made this statement in denying the respondents' requests for an award of costs: "[W]e have a public entity that basically has the responsibility and job and duty of helping elderly folks and people that have been exploited. To have them pay for something like this is really absurd. It's absurd."

¶ 26    It was well within the purview of the trial court to form this assessment on the propriety of pleading sanctions, based on its familiarity with the case and experience presiding over it. The trial court here was faced with an emergency motion, which was verified, in which the petitioner asserted that it had received a confirmed report that over $100,000 had been withdrawn from

Wilcox's bank accounts without explanation, that it had made reasonable attempts to obtain information to ensure this was not a case of financial exploitation of an elderly adult, and that the respondents were being uncooperative in providing the necessary information or access to Wilcox for the petitioner to complete its investigation. As such, the trial court could conclude that the filing of the emergency motion for an *ex parte* order, which is a procedure allowed by statute to enable a provider agency to complete the investigations it is charged with conducting and ensure that elderly adults can be evaluated for needed services without interference, was a reasonable attempt by the petitioner to fulfill its statutory duty. The *ex parte* order was in effect for only 15 days, and we see no indication that it was sought for any improper purpose. We conclude that the trial court's denial of the motion for sanctions was not an abuse of discretion. Furthermore, the trial court was not required to conduct an evidentiary hearing to make its determination that no frivolous pleading had been filed in the case. *Shea*, 250 Ill. App. 3d at 154-55.

¶ 27                                    CONCLUSION

¶ 28        For the reasons set forth above, the judgment of the trial court is affirmed.

¶ 29        Affirmed.